

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE DEC 1 7 2015

CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Dec. 17, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 90577-1 |
| | ) | |
| Respondent, | ) | |
| | ) | En Banc |
| v. | ) | |
| | ) | |
| MICHAEL J. REEDER, | ) | |
| | ) | Filed ___ DEC 1 7 2015 |
| Petitioner. | ) | |
| | ) | |

FAIRHURST, J.—Michael J. Reeder appeals a published Court of Appeals decision affirming his conviction on 14 counts of securities fraud and 14 counts of theft in the first degree. We granted review of two issues.

First, Reeder claims that subpoenas duces tecum issued by a special inquiry judge (SIJ)[1] to financial institutions for Reeder's private bank records violated his constitutional rights under article I, section 7 of the Washington Constitution. Suspecting Reeder of securities fraud and theft, the prosecuting attorney sought a

---

[1] At times, this opinion will refer to the subpoenas duces tecum collectively as "subpoena." A "subpoena duces tecum" is a form of subpoena that commands the witness to testify and to bring documents. *See* BLACK'S LAW DICTIONARY 1654 (10th ed. 2014).

subpoena from an SIJ to obtain Reeder's private bank records. Reeder moved to suppress the evidence of his bank records, claiming they were obtained in violation of his constitutional rights. The trial court denied the motion, and the Court of Appeals affirmed, finding that the subpoena issued by an SIJ was valid authority of law under article I, section 7 of the Washington Constitution to obtain Reeder's bank records from the financial institutions. We affirm.

Second, Reeder asserts that his sentence violates principles of double jeopardy because the trial court imposed multiple punishments for the same offense. The Court of Appeals affirmed the trial court's sentence, finding that the State acted within its discretion to charge Reeder with separate counts for each fraudulent transaction. We affirm the trial court's sentence because the State presented evidence supporting 14 separate transactions that were punishable under the securities fraud and theft in the first degree statutes.

## I. FACTS AND PROCEDURAL HISTORY

Reeder met William McAllister through a company that provided nonbank real estate financing, Private Mortgage Investors Inc. Between March 2006 and June 2007, McAllister made a series of payments to Reeder for two real estate investments. During this time, McAllister paid Reeder approximately $1.7 million through several different checks or transactions.

The first real estate transaction began when Reeder told McAllister that he had an opportunity to purchase two parcels of land in Snohomish County. In June 2006, Reeder and McAllister formed a limited liability company and opened a bank account to purchase the two properties. As down payments for the two properties, McAllister loaned Reeder $200,000 and $150,000 in two separate transactions. Both McAllister and Reeder signed an agreement documenting McAllister's loans. According to the agreement, Reeder had already signed the purchase and sale agreements for the two properties. However, the properties were not purchased or developed, and Reeder never returned McAllister's money.

The second real estate transaction took place when Reeder told McAllister that there was an opportunity to purchase property in Bellevue. Reeder knew at the time he made this representation that the owners of the Bellevue property did not intend to sell the property. Reeder showed McAllister a property appraisal that valued the property at $2 million. McAllister relied on Reeder's representations and made a series of payments totaling $1.4 million. Reeder did not use any of the funds to buy the property and did not return McAllister's money.

The State obtained Reeder's bank records under RCW 10.27.170 using subpoenas issued by an SIJ.[2] The bank records revealed that Reeder withdrew

---

[2]The State requested that the SIJ issue subpoenas to Bank of America NA; Whidbey Island Bank; Citibank; Capital One Bank; Experian; TransUnion; Equifax Credit Information Services;

McAllister's money and that he used the funds in casinos and for personal expenses. On April 8, 2011, Reeder was charged with 14 counts of securities fraud and 14 counts of theft in the first degree.[3] The different counts were based on the separate payments that McAllister made to Reeder.

In June 2011, Reeder moved to suppress his private bank records, arguing that they were obtained in violation of his constitutional rights because he believed the State did not have a valid warrant or judicially issued subpoena as required by *State v. Miles*, 160 Wn.2d 236, 249, 156 P.3d 864 (2007). In November 2011, the State, by letter, informed Reeder that his bank records were obtained through an SIJ proceeding subpoena and were available for his inspection. Reeder also received copies of the SIJ subpoenas.[4] Reeder requested release of the documents justifying the SIJ subpoenas. The State responded that SIJ proceedings are secret under RCW 10.27.090(3) and that the secrecy and confidentiality of the proceedings are critical to achieving the purpose of an SIJ proceeding. However, the State recognized that

---

Northwest Plus Credit Union; HSBC Bank, USA, NA; Wells Fargo Bank, NA; JP Morgan Chase; U.S. Bank National Association; and Boeing Employee's Credit Union.

[3]The State filed an amended information on June 15, 2012.

[4]Reeder's attorney did not state that he obtained the subpoenas in question. However, the prosecuting attorney delivered several boxes of records to Reeder's attorney, and the trial court judge stated, "I am going to take [the prosecuting attorney's] representation at this time that [the subpoenas] will be made available to you." Verbatim Report of Proceedings (July 2, 2012) at 46. Since there is not a specific discovery rule regarding the records produced at an SIJ proceeding, the prosecuting attorney here noted that he compares SIJ proceedings to materials obtained through a grand jury and provides records of SIJ proceedings to defendants with permission from the court. *Id.* at 45; *see* CrR 4.7; RCW 10.27.090(5).

"due process may require disclosure of facts contained within the information sheets that provide the legal basis for obtaining the evidence." Clerk's Papers at 476.

The trial court denied Reeder's motion to suppress the records obtained by the SIJ subpoena. The jury found Reeder guilty of 14 counts of securities fraud and 14 counts of first degree theft and entered special verdicts finding that each offense was a major economic or serious offense. The court imposed an exceptional sentence. Reeder appealed the trial court's decision and sentence.

Reeder raised four issues on appeal. *State v. Reeder*, 181 Wn. App. 897, 907, 330 P.3d 786 (2014). The Court of Appeals affirmed on all four issues, holding that (1) Reeder failed to allege facts showing that his trial attorney had a conflict of interest that deprived him of effective assistance of counsel, (2) the State did not violate Reeder's right to privacy by obtaining his bank records through the SIJ proceeding because it obtained the records pursuant to a valid, judicially reviewed subpoena, (3) the statute of limitations period did not bar some or all of the State's charges against Reeder, and (4) the State acted within its discretion when it charged Reeder with separate counts for each transaction and his multiple punishments did not violate double jeopardy. *Id.* at 931.

Reeder petitioned this court for review of three issues. We granted review of two issues: (1) whether the State violated Reeder's right to privacy by obtaining his bank records through the SIJ proceeding and (2) whether Reeder's sentence violated

5

the prohibition against double jeopardy.[5] *State v. Reeder*, 181 Wn.2d 1014, 337 P.3d 325 (2014). We affirm the Court of Appeals on both issues.

## II. ISSUES

A. Did the subpoena issued by the SIJ to financial institutions provide sufficient authority of law under article I, section 7 to obtain Reeder's bank records?

B. Did the trial court's sentence violate the constitutional prohibition against double jeopardy when it sentenced Reeder to several counts of the same crime?

## III. ANALYSIS

A. The SIJ subpoena provided sufficient authority of law

Reeder asserts that the subpoena issued by the SIJ did not provide the authority of law that is required by article I, section 7 because it was not justified by probable cause.[6]

Article I, section 7 states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Though similar, the protections afforded by this provision are broader and qualitatively different than those protections afforded in the Fourth Amendment to the United States Constitution. *State v. Gunwall*, 106 Wn.2d 54, 65, 720 P.2d 808 (1986); *City of Seattle v. McCready*, 123 Wn.2d 260, 267, 868 P.2d 134 (1994); *State v. Eisfeldt*,

---

[5]We did not accept review of the conflict of interest issue.

[6]"Probable cause exists if the affidavit in support of the warrant sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched." *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999).

6

163 Wn.2d 628, 634, 185 P.3d 580 (2008). Article I, section 7 necessarily includes those legitimate expectations of privacy protected by the Fourth Amendment. *State v. Garcia-Salgado*, 170 Wn.2d 176, 183, 240 P.3d 153 (2010).

The analysis of article I, section 7 breaks down into two parts—"'private affairs'" and "'authority of law.'" *In re Pers. Restraint of Maxfield*, 133 Wn.2d 332, 339, 945 P.2d 196 (1997). If a private affair is not disturbed, then there is no violation of article I, section 7. *Miles*, 160 Wn.2d at 244. If a valid privacy interest has been disturbed, then we must determine whether the disturbance was justified by authority of law. *Id.*

1.    *Private affairs*

Article I, section 7 protects "'those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass.'" *Maxfield*, 133 Wn.2d at 339 (quoting *State v. Myrick*, 102 Wn.2d 506, 511, 688 P.2d 151 (1984)). To determine whether a privacy interest exits under article I, section 7, we must examine whether a particular expectation of privacy is one that a citizen of this state should be entitled to hold. *McCready*, 123 Wn.2d at 270. Part of this inquiry focuses on what kind of protection has been historically afforded to the interest asserted, and part of it focuses on the nature and extent of the information that may be obtained as a result of government conduct. *Miles*, 160 Wn.2d at 244.

In *Miles*, the court found that private bank records held by a third party could potentially reveal sensitive personal information. *Id.* at 246. Bank records can reveal where the person has traveled, the person's reading habits, and the person's financial condition. *Id.* at 246-47. After noting that bank records were historically protected, the court held that bank records are considered private affairs protected by the constitution. *Id.* at 247 ("Little doubt exists that banking records, because of the type of information contained therein, are within a person's private affairs."). Reeder's bank records are private affairs under article I, section 7.[7] The State invaded Reeder's private affairs by obtaining his bank records from a third party.

2. *Authority of law*

Since the State invaded Reeder's private affairs by obtaining his bank records from financial institutions, this case turns on whether a subpoena issued by an SIJ pursuant RCW 10.27.170 is sufficient authority of law to support such an invasion.

a) *SIJ proceedings*

The legislature created the SIJ proceeding to provide an additional investigatory tool for the prosecuting attorney. 22 WASH. STATE JUDICIAL COUNCIL, TWENTY-SECOND BIENNIAL REPORT 18 (1969-1970) (hereinafter JUDICIAL REPORTS). An SIJ "is a superior court judge designated by a majority of the superior court judges of a county to hear and receive evidence of crime and corruption." RCW

---

[7]The State does not contest that bank records are protected by article I, section 7.

10.27.020(7). We have held that an SIJ is a neutral magistrate. *State v. Neslund*, 103 Wn.2d 79, 88, 690 P.2d 1153 (1984). An SIJ has the authority to issue subpoenas for testimony or evidence when there is "reason to suspect crime or corruption." RCW 10.27.170.

The SIJ proceeding was created by the Criminal Investigatory Act of 1971, chapter 10.27 RCW. LAWS OF 1971, 1st Ex. Sess., ch. 67. The enactment of chapter 10.27 RCW was intended to reorient the grand jury system as it relates to modern society. JUDICIAL REPORTS, *supra*, at 17. Chapter 10.27 RCW was "enacted on behalf of the people of the state of Washington to serve law enforcement in combating crime and corruption." RCW 10.27.010. Under chapter 10.27 RCW,[8] a grand jury in Washington "consists of twelve persons, is impaneled by a superior court and constitutes a part of such court." RCW 10.27.020(6). The grand jury hears, examines, and investigates evidence concerning criminal activity and corruption. *Id.* The grand jury may issue indictments after a hearing and upon a finding of probable cause. RCW 10.27.150.

In contrast to a grand jury, an SIJ cannot issue subpoenas once a defendant is charged with a crime. *State v. Manning*, 86 Wn.2d 272, 275, 543 P.2d 632 (1975). SIJs also cannot issue indictments and do not make the decision of whether to

---

[8]This opinion cites to the current version of chapter 10.27 RCW. RCW 10.27.070 through .100 and .120 through .150 were amended in 2010 to remove gender based terms. LAWS OF 2010, ch. 8, §§ 1019-1026.

prosecute. *Neslund*, 103 Wn.2d at 86; JUDICIAL REPORTS, *supra*, at 18. Like a grand jury, the SIJ proceedings are secret and confidential. RCW 10.27.090(3). The records from an SIJ proceeding or a grand jury are available only to the attorney that instituted the hearing, and such attorney may introduce the evidence collected at the proceeding at any other grand jury or trial. RCW 10.27.090(4). The court may make available evidence presented before an SIJ to a criminal defendant if on "proper application and upon a showing of good cause" the court determines that "doing so is in the furtherance of justice."[9] RCW 10.27.090(5)(a).

      b)     *Judicially reviewed subpoenas provide sufficient authority of law to obtain banking records from financial institutions*

Reeder argues that because bank records are private affairs under article I, section 7, the only authority of law that can justify the invasion is a warrant based on probable cause.[10]

---

[9]According to the Washington Association of Prosecuting Attorneys' (WAPA) model policy for using SIJ proceedings, it is recommended that the prosecuting attorney obtain an order from the SIJ authorizing disclosure as required by the prosecuting attorney's discovery obligations in the event the investigation results in criminal charges. *WAPA Model Policy for Using Special Inquiry Judge Proceedings*, http://www.waprosecutors.org/ docs/2012%20SIJ %20 Model%20 Policy_1.pdf. The prosecuting attorney's discovery obligations are set forth in CrR 4.7 and require the prosecuting attorneys to disclose, among other things, transcripts from grand juries when authorized by the court and any documents that the prosecuting attorney intends to use at trial that were obtained from or belonged to the defendant. CrR 4.7 (a)(1)(iii), (v).

[10]Reeder notes that Michigan has a similar SIJ statute. The Michigan statute requires the judge to "have probable cause to suspect that any crime" has been committed before such judge may make an order directing an inquiry into the complaint. MICH. COMP. LAWS § 767.3. Washington's SIJ proceedings, chapter 10.27 RCW, are based on Michigan's statute. *Manning*, 86 Wn.2d at 273-74. However, unlike chapter 10.27 RCW, the Michigan statute is considered investigatory in nature because the judge is permitted to issue an indictment. *Id.* at 274-75.

Our cases have found that the authority of law to collect private records encompasses more than a warrant based on probable cause. *See Gunwall*, 106 Wn.2d at 68-69 ("[T]he 'authority of law' required by Const. art. 1, § 7 in order to obtain records includes authority granted by a valid, (*i.e.*, constitutional) statute, the common law or a rule of this court."); *Maxfield*, 133 Wn.2d at 342 ("'authority of law includes legal process such as a search warrant or subpoena'" (internal quotation marks omitted) (quoting *Gunwall*, 106 Wn.2d at 68-69)); *see also Miles*, 160 Wn.2d at 247. Permitting the disturbance of private affairs pursuant to a constitutional statute represents the framers' intent to give both the legislature and the courts the ability to provide the law authorizing the disturbance of a citizen's private affairs. Charles W. Johnson & Scott P. Beetham, *The Origin of Article I, Section 7 of the Washington State Constitution*, 31 SEATTLE U.L. REV. 431, 449 (2008).

This court has also found that if a subpoena, rather than a warrant, is the authority of law, such subpoena must be justified by some reason besides the statutory authority granting the power to issue the subpoena. *Miles*, 160 Wn.2d at 248. In *Miles*, this court held that an administrative subpoena issued under the Securities Act of Washington (Securities Act),[11] was insufficient authority of law to obtain a person's private bank records. *Id.* at 252. After noting that a warrant or judicially issued subpoena could provide authority of law, the court found that the

---

[11] Chapter 21.20 RCW.

11

Securities Act did not provide the protections afforded by either process. *Id.* at 247.

The Securities Act gave subpoena authority to the director of the Securities Division

of the Washington State Department of Financial Institutions. *Id.* at 243. Under the

Securities Act, the director or any officer has the authority to "'subpoena witnesses,

compel their attendance, take evidence, and require the production of any books,

papers, correspondence, memoranda, agreements, or other documents or records

which the director deems relevant.'" *Id.* at 243 (quoting RCW 21.20.370(1)). The

Securities Act further provided that the director could exercise his or her subpoena

authority at his or her discretion. *Id.* The court in *Miles* held that there must be some

further justification to invade a person's private affairs than just the statute

authorizing a subpoena and that subpoenas, especially for a criminal investigation,

must be subject to judicial review to reduce mistaken intrusions of people's private

affairs. *Id.* at 248-50.

Here, the Court of Appeals held that the subpoena issued by the SIJ provided

sufficient authority of law to obtain Reeder's bank records. *Reeder*, 181 Wn. App.

at 917. The court reasoned that "a neutral magistrate determined that evidence

presented by the petitioner established a reasonable suspicion that Reeder had

committed a crime and reason to believe the records described in the subpoena would

provide material evidence of that crime." *Id.*

The Court of Appeals correctly held that the subpoena provided sufficient authority of law to obtain bank records held by financial institutions. The subpoena was issued pursuant to the SIJ's power under RCW 10.27.170, a presumably constitutional statute.[12] Unlike the statute in *Miles* that authorized the director to issue a subpoena based on his or her discretion, RCW 10.27.170 requires that the SIJ issue a subpoena only if there is "reason to suspect crime or corruption." Moreover, under RCW 10.27.170, a subpoena is issued by an SIJ who is a superior court judge and neutral magistrate. *Neslund*, 103 Wn.2d at 88; RCW 10.27.020(7).

Amicus curiae Washington State Attorney General's Office (AGO) notes that the court in *Miles* identified a warrant or a subpoena as two separate procedures to satisfy the authority of law requirement, demonstrating that either are sufficient. However, if a subpoena is the authority, it must be justified by some reason and it must be subject to judicial review. The court in *Miles* did not specify that probable cause is required, only that the subpoena must be based on some reason. A subpoena issued by an SIJ to obtain bank records held by financial institutions is proper authority of law to invade one's private affairs under article I, section 7 because it is based on some reason and is subject to judicial review.

---

[12]Cases reviewing RCW 10.27.170 have not questioned whether this provision is constitutional. Statutes are presumed constitutional. *Sch. Dists.' All. for Adequate Funding of Special Educ. v. State*, 170 Wn.2d 599, 605-06, 244 P.3d 1 (2010).

      c)    *Reason to suspect crime or corruption is sufficient to justify issuance of a subpoena by an SIJ*

Since a judicially reviewed subpoena issued pursuant to a constitutional statute can be authority of law under article I, section 7, we must determine whether "reason to suspect crime or corruption" is a sufficient justification for a subpoena issued by an SIJ for private bank records. RCW 10.27.170. Because Washington case law has not specifically addressed this issue, the Court of Appeals analogized SIJ subpoenas to subpoenas issued by federal grand juries. *Reeder*, 181 Wn. App. at 916.

Like the Washington grand jury system set forth in chapter 10.27 RCW, the federal "grand jury occupies a unique role in our criminal justice system." *United States v. R. Enters., Inc.*, 498 U.S. 292, 297, 111 S. Ct. 722, 112 L. Ed. 2d 795 (1991). The federal grand jury "is an investigatory body charged with the responsibility of determining whether or not a crime has been committed." *Id.* The Supreme Court of the United States has held that a subpoena issued by a federal grand jury does not need to be justified by probable cause. *See id.*

The Court in *R. Enterprises* reasoned that "the Government cannot be required to justify the issuance of a grand jury subpoena by presenting evidence sufficient to establish probable cause because the very purpose of requesting the information is to ascertain whether probable cause exists." *Id.* A showing of less than probable cause is adequate because the Supreme Court has noted that a subpoena issued by a

14

federal grand jury intrudes less on one's privacy rights than a search or seizure and, as such, does not receive the same Fourth Amendment protections as a search or seizure. *United States v. Dionisio*, 410 U.S. 1, 10, 93 S. Ct. 764, 35 L. Ed. 2d 67 (1973) ("The compulsion exerted by a grand jury subpoena differs from the seizure effected by an arrest or even an investigative 'stop.'"). According to the Supreme Court, a subpoena, unlike a search warrant, does not involve a stigma because it is served in the same manner as other legal process. *Id.* Moreover, a subpoena can generally be altered and remains under the supervision of the court at all times. *Id.* A subpoena issued by a grand jury also has a different and lesser effect on the recipient than a subpoena issued in the context of a prospective criminal trial where the crime charged and the defendant are identified. *R. Enterprises*, 498 U.S. at 297.

A federal grand jury's investigatory powers are not unlimited. *See id.* at 299. Grand juries are not entitled "to engage in arbitrary fishing expeditions." *Id.* A federal court on motion "'may quash or modify a subpoena if compliance would be unreasonable or oppressive.'" *Id.* (quoting FED. R. CRIM. P. 17(c)). What is reasonable depends on context. *Id.* Since grand juries do not announce the subject of their investigations, a party that would like to challenge the subpoena may have little knowledge as to the government's purpose in seeking production of the requested information. *Id.* at 299-300. Despite some of the barriers to contesting a subpoena, the Court in *R. Enterprises* held that a subpoena could be justified by less

than probable cause to achieve the purpose of grand jury investigations. *Id.* at 297, 299.

Here, the Court of Appeals held that similar to a federal grand jury, the purpose of the SIJ proceeding is to gather evidence about suspected crimes to assist the prosecuting attorney or a grand jury in determining if probable cause exists to issue an indictment. *Reeder*, 181 Wn. App. at 917. The Court of Appeals held that, like a federal grand jury subpoena, the appropriate level of justification for subpoenas issued by an SIJ could be something less than probable cause. *Id.*

Reeder contends that the Court of Appeals erred by examining federal cases discussing federal grand juries because the protections of the Fourth Amendment differ from the protections of article I, section 7. In addition, Reeder asserts that SIJ subpoenas are not analogous to grand jury subpoenas because an SIJ is not empowered to issue or reject indictments. Subpoenas are simply an investigatory tool. *See Manning*, 86 Wn.2d at 274. However, Reeder does not explain why this difference should require a higher level of justification for subpoenas issued by an SIJ.

Reeder contends that grand juries are a unique historical device that were meant to screen unwarranted or malicious prosecutions. Unlike the historical grand juries, Reeder contends that SIJ proceedings give prosecuting attorneys free rein to invade a person's private affairs with little justification. However, Reeder's

assertions disregard that grand juries have historically existed for dual purposes—protecting the individual from the government and examining the situations that are still in inquiry stage to discover evidence for the prosecuting attorney. 3 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 8.1(a) (3d ed. 2007).

Cases examining federal grand juries serve as a helpful comparison to determine if the justification for an SIJ subpoena is sufficient. Like federal grand juries, grand juries in Washington were created to investigate crime and determine whether a crime occurred. RCW 10.27.150 ("After hearing, examining, and investigating the evidence before it, a grand jury may, in its discretion, issue an indictment."). The legislature intended the SIJ proceedings to supplement the grand jury system. Such intent is shown by the legislative history of chapter 10.27 RCW and the legislature including the statutory provisions governing SIJ proceedings in the same section as those statutory provisions governing grand juries. *See* JUDICIAL REPORTS, *supra*, at 17-18. SIJ proceedings are similar to federal grand jury proceedings in their purpose and structure. The purpose of an SIJ subpoena is to assist the prosecuting attorney to obtain evidence that can then be turned over to a grand jury. *Id.* Both grand juries and SIJs have the authority to issue subpoenas and to call witnesses. RCW 10.27.140(3). Both also produce evidence available to prosecuting attorneys in criminal prosecutions. RCW 10.27.090(4). Like federal grand juries, the reports and testimony during SIJ proceedings are confidential and

not disclosed to the public unless there is sufficient reason. RCW 10.27.090(3), (5); FED. R. CRIM. P. 6(e)(2), (3). Whether to disclose grand jury evidence rests in the discretion of the trial court. *State v. Sponburgh*, 84 Wn.2d 203, 210, 525 P.2d 238 (1974).

Like a federal grand jury, an SIJ's powers are not unlimited. An SIJ proceeding can be initiated only if there is reason to suspect that crime or corruption has occurred. RCW 10.27.170. The power of the prosecuting attorney to obtain evidence through a subpoena is subject to judicial review. The SIJ reviews the request of the prosecuting attorney for a subpoena to ensure the request is sufficiently justified. Subpoenas can be quashed on a motion. CrR 4.8(b)(4). Considering the similarities of SIJ proceedings and federal grand juries, the Court of Appeals did not err by examining federal cases discussing federal grand juries.

Where SIJ proceedings differ from state or federal grand juries, SIJ proceedings provide greater protections. An SIJ proceeding cannot be used where charges have already been filed against a defendant, and an SIJ cannot independently investigate the alleged crime or issue an indictment. Because an SIJ cannot issue an indictment, it does not serve an investigative role. *See Manning*, 86 Wn.2d at 275. To ensure neutrality, the SIJ is disqualified from a subsequent proceeding involving the case under investigation. RCW 10.27.180. Therefore, a subpoena issued by an

SIJ, like a subpoena issued by a federal grand jury, can be justified by less than probable cause, and "reason to suspect crime or corruption" is sufficient.

        d)      *Our decision in* Garcia-Salgado *does not require a subpoena issued by an SIJ to be justified by probable cause*

Reeder contends that *Garcia-Salgado* requires probable cause to justify an invasion into his private affairs. In *Garcia-Salgado*, the defendant was ordered to submit to a cheek swab for deoxyribonucleic acid (DNA) pursuant CrR 4.7(b)(2)(vi). 170 Wn.2d at 182. This court found that because a cheek swab to procure DNA is a search under the Fourth Amendment to the United States Constitution, it must be supported by a warrant, unless the search meets one of the exceptions to the warrant requirement. *Id.* at 184. The court found that a court order could satisfy the warrant requirement under the Fourth Amendment and article I, section 7 if the order contains all the elements of a warrant. *Id.* a 187. After finding that there was not sufficient evidence of probable cause to support the court order, this court held that the defendant was searched in violation of the federal and state constitutions. *Id.* at 188-89.

Reeder asserts that a subpoena issued by an SIJ should be treated as the equivalent of the court order examined in *Garcia-Salgado*. In contrast, the Court of Appeals found that the holding in *Garcia-Salgado* did not provide any guidance regarding the justification needed for a subpoena. *Reeder*, 181 Wn. App. at 918.

The Court of Appeals was correct. The two cases differ in procedural posture and in the privacy interests at stake. The defendant in *Garcia-Salgado* was already charged with a crime, and the court order was used to investigate. 170 Wn.2d at 182. Under RCW 10.27.170, an SIJ cannot issue a subpoena to gather evidence against a defendant already charged with a crime. *See State v. Burri*, 87 Wn.2d 175, 178, 550 P.2d 507 (1976). The privacy interest at stake was different in *Garcia-Salgado*. The DNA cheek swab in *Garcia-Salgado* was a search under the Fourth Amendment. 170 Wn.2d at 184. The Fourth Amendment does not protect information in bank records. *United States v. Miller*, 425 U.S. 435, 443, 96 S. Ct. 1619, 48 L. Ed. 2d 71 (1976) (noting that under the Fourth Amendment, there is a lack of any legitimate expectation of privacy in bank records).[13]

We hold that the subpoena issued by the SIJ for Reeder's bank records satisfies the authority of law requirement under article I, section 7. Our cases do not require that the authority of law under article I, section 7 must satisfy the probable cause requirement of a warrant. Rather, we have recognized that a judicially issued subpoena can be sufficient authority of law to invade a citizen's private affairs.

---

[13]The dissent argues that the court relies solely on the federal Fourth Amendment precedent while ignoring article I, section 7. Dissent at 6. We direct the dissent to pages 8-18 of this opinion for an in-depth analysis of how the subpoena of banking records from a financial institution during an SIJ proceeding is consistent with this court's interpretation of article I, section 7, despite the privacy interests individuals have in their banking records.

Justifying a subpoena for bank records held by financial institutions on less than probable cause aligns with the purpose of the grand jury and SIJ proceedings.

B.     Reeder's sentence did not violate double jeopardy

Reeder was charged with 14 counts of securities fraud and 14 counts of theft in the first degree. Reeder argues that his multiple convictions violate double jeopardy principles. "Claims of double jeopardy are questions of law, which we review de novo." *State v. Hughes*, 166 Wn.2d 675, 681, 212 P.3d 558 (2009).

The double jeopardy clause of the Fifth Amendment and the state constitutional protection against double jeopardy, article I, section 9, offer the same scope of protection. *State v. Adel*, 136 Wn.2d 629, 632, 965 P.2d 1072 (1998). The Fifth Amendment encompasses three distinct protections. *State v. Gocken*, 127 Wn.2d 95, 100, 896 P.2d 1267 (1995). First, it "'protects against a second prosecution for the same offense after acquittal.'" *Id.* (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969)). Second, "'[i]t protects against a second prosecution for the same offense after conviction.'" *Id.* (quoting *Pearce*, 395 U.S. at 717). Third, "'it protects against multiple punishments for the same offense.'" *Id.* (quoting *Pearce*, 395 U.S. at 717). Reeder claims that his convictions violate the third protection.

When a defendant is convicted for violating one statute multiple times, the proper inquiry is "what 'unit of prosecution' has the Legislature intended as the

punishable act under the specific criminal statute." *Adel*, 136 Wn.2d at 634. The legislature has the power to define what conduct is punishable. *Id.* The scope of the criminal act as defined by the legislature is considered the unit of prosecution. *Id.* Double jeopardy protects a defendant from being convicted twice under the same statute for committing just one unit of prosecution. *Id.* The issue is one of statutory interpretation and legislative intent. *Id.* If the legislature fails to state a unit of prosecution in a criminal statute, any ambiguity must be construed in favor of lenity. *Id.* at 634-35.

In *Adel*, the court found that a defendant's sentence violated principles of double jeopardy where he was charged with two counts of simple possession of marijuana. *Id.* at 631. Adel was found with marijuana in two places: the ashtray of his car and the cash register counter of his store. *Id.* The court began its analysis by examining the statute and determined that the unit of prosecution was possession of 40 grams of marijuana regardless of where the drug was located. *Id.* at 637. The court held that even though Adel had marijuana in two places, his conduct constituted only one violation of the possession statute, and the court reversed his conviction. *Id.*

To determine if the State violated double jeopardy principles here, we must examine the statutes in question.

1.    *Securities fraud*

Washington's security fraud statute, RCW 21.20.010, states:

It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:
    (1) To employ any device, scheme, or artifice to defraud;
    (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
    (3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

The term "sale" "includes every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value." Former RCW 21.20.005(10) (2002) (now codified at RCW 21.20.005(14)). The term "'[s]ecurity' means any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; . . . or, in general, any interest or instrument commonly known as a 'security.'" Former RCW 21.20.005(12)(a) (2002) (now codified at RCW 21.20.005(17)(a)).

The statute prohibits any misleading acts in connection with the sale of a security. Because the definition of "sale" includes every sale of a security, it indicates the legislature's intent for each transaction or sale to constitute the unit of prosecution. Therefore, the State was correct to assert, and the Court of Appeals was correct to find, that the unit of prosecution in the securities fraud statute is every separate sale of a security. *Reeder*, 181 Wn. App. at 926.

23

In contrast, Reeder argues that the unit of prosecution in RCW 21.20.010 is the security. Even though there were many separate payments and misrepresentations, according to Reeder because there was only one security at issue, there can be only one count of securities fraud. Reeder also points to the prosecuting attorney telling the jury to find that the securities fraud offenses were all part of a continuing impulse or scheme.

Reeder cites *State v. Mahmood*, 45 Wn. App. 200, 206, 724 P.2d 1021 (1986), to support his argument that his securities fraud sentence violates double jeopardy. Reeder states that the *Mahmood* court found that RCW 21.20.010 describes a single offense. *Id.* What the *Mahmood* court held was that under RCW 21.20.010, "making an untrue statement and omitting to make a material statement are not separate offenses . . . . [T]hey may inhere in the same transaction." *Id.* The *Mahmood* court addressed whether the State could charge the separate alternatives listed in RCW 21.20.010(2) as separate crimes. It did not find that the unit of prosecution for securities fraud was the entire unlawful scheme. As the State notes, by finding that the alternatives described in RCW 21.20.010(2) can be part of the same transaction, the court in *Mahmood* indicated that each transaction is a separate violation of the securities fraud statute.

Since the State presented evidence that 14 different misleading sales took place between Reeder and McAllister on several different dates, Reeder's sentence does not violate the principles of double jeopardy.

2.    *Theft in the first degree*

"A person is guilty of theft in the first degree if he or she commits theft of: (a) [p]roperty or services which exceed(s) one thousand five hundred dollars in value." Former RCW 9A.56.030(1)(a) (2005). "Theft" as charged here means obtaining control "[b]y color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services." RCW 9A.56.020(1)(b). One "'exerts unauthorized control'" over property when one

> [h]a[s] any property or services in one's possession, custody or control as . . . agent . . . or competent authority to take or hold such possession, custody, or control, to secrete, withhold, or appropriate the same to his or her own use or to the use of any person other than the true owner or person entitled thereto.

Former RCW 9A.56.010(19)(b) (2006) (now codified at RCW 9A.56.010(22)(b)). Prosecuting attorneys generally have discretion in deciding whether to aggregate the crimes or to charge them separately. *See State v. Lewis*, 115 Wn.2d 294, 299, 797 P.2d 1141 (1990).

Reeder argues that Washington's theft statute does not define the unit of prosecution for theft in the first degree and, therefore, the statute is ambiguous as to

whether multiple acts of theft that were part of an ongoing plan could be punished separately. It follows then, Reeder asserts, that the rule of lenity dictates that the statute be construed in his favor. He also argued that if a criminal impulse is continuing, it is one crime.

To challenge his theft convictions, Reeder cites *State v. Turner*, 102 Wn. App. 202, 6 P.3d 1226 (2000). In *Turner*, the court found that the first degree "theft statute is ambiguous as to the unit of prosecution for theft by different schemes or plans against the same victim over the same period of time." *Id.* at 204. The defendant in *Turner* stole from his employer in several ways, and in total there appeared to be 72 individual acts of theft. *Id.* at 203-04. The State initially charged Turner with one count of first degree theft for each unlawful act. *Id.* at 204. The State then amended the information to charge Turner with four counts of first degree theft. *Id.* The different counts were based on the different methods by which Turner allegedly stole from his employer. *Id.* The court held that the charges violated double jeopardy principles. *Id.* at 203. The court also noted that the statute makes no mention of schemes or plans but instead the unit of prosecution is the "exertion of unauthorized control over the property of the employer, where the property exceeds $1,500 in value." *Id.* at 208.

The court's holding and reasoning in *Turner* does not conflict with the Court of Appeals decision here. The prosecuting attorney charged Reeder with 14

individual counts of obtaining unauthorized control over the property or services of another. Unlike the counts in *Turner* that were based on different schemes, each count here was based on a separate transaction that occurred at a separate time. *Id.*

Reeder cites *State v. Dash,* 163 Wn. App. 63, 259 P.3d 319 (2011), to support his argument that so long as his criminal impulse continued, the transactions were part of one crime.[14] In *Dash*, the court stated that "[w]here 'successive takings are the result of a single, continuing criminal impulse or intent and are pursuant to the execution of a general larcenous scheme or plan, such successive takings constitute a single larceny regardless of the time which may elapse between each taking.'" *Id.* at 68 (quoting *State v. Vining*, 2 Wn. App. 802, 808-09, 472 P.2d 564 (1970)). However, in *Dash*, the court was not addressing or interpreting the unit of prosecution in a particular statute. Rather, the court addressed whether a criminal scheme as a whole was within the statute of limitations. The defendant in *Dash* argued that the jury instructions allowed the jury to convict him without finding that a criminal act occurred within the statute of limitations. *Id.* at 67. The *Dash* court agreed with the defendant and reversed his conviction because the jury instructions did not require the jury to make a finding as to when the defendant's criminal

---

[14]Reeder also cites *State v. Mermis*, 105 Wn. App. 738, 20 P.3d 1044 (2001), to support his argument that his actions were a single, continuous scheme. In *Mermis*, the court stated, "If the impulse continues, the crime is not complete until the continuing impulse has been terminated." *Id.* at 745. Like in *Dash*, the *Mermis* court was discussing whether a criminal impulse terminated within the statute of limitations. The court was not discussing the unit of prosecution in the theft statute. *Id.* at 746.

27

impulse terminated and, therefore, it could not be determined whether the jury convicted the defendant of criminal acts within the statute of limitations. *Id.* at 71.

The rule articulated in *Dash* does not affect the issue here, which is whether individual transactions may be charged separately without violating double jeopardy principles. There is evidence that Reeder fraudulently obtained control over McAllister's property through 14 different transactions and, therefore, it was within the prosecuting attorney's discretion to charge Reeder with 14 individual counts of theft in the first degree.

We hold that Reeder's sentence did not violate double jeopardy principles because he was not charged multiple times for the same offense. Each count was based on evidence of 14 distinct times that Reeder's conduct violated each statute.

## IV.   CONCLUSION

We affirm the Court of Appeals. First, the Court of Appeals was correct to hold that the subpoena issued by the SIJ for bank records held by financial institutions was sufficient authority of law under article I, section 7. Authority of law under article I, section 7 can be a judicially issued subpoena so long as it is based on some reason. The subpoena here was issued by a neutral magistrate and based on reason to suspect crime or corruption. Second, the Court of Appeals was correct to hold that Reeder's sentence did not violate principles of double jeopardy. Reeder's

sentence was supported by 14 individual acts that were within each statute's unit of prosecution.

Fairhurst, J.

WE CONCUR:

Madsen, C.J.

Wiggins, J.

González, J.

No. 90577-1

GORDON McCLOUD, J. (dissenting)—Petitioner Michael Reeder argues that the State may not search an individual's personal banking records without probable cause. In support of this argument, he relies primarily on this court's decision in *State v. Garcia-Salgado*, 170 Wn.2d 176, 184, 240 P.3d 153 (2010), which held that probable cause must support a court order to submit to a DNA (deoxyribonucleic acid) cheek swab. The majority rejects this argument in an analysis predicated on two erroneous conclusions: first, that the Fourth Amendment to the United States Constitution does not limit federal grand jury subpoenas; second, that article I, section 7 of the Washington State Constitution affords greater privacy protections for DNA than for financial records. The first conclusion conflicts with United States Supreme Court precedent; the second conflicts with this court's precedent.

Perhaps because it proceeds from these flawed premises, the majority opinion results in a holding that is both sweeping and confusing: personal banking records

are "private affairs" *protected by article I, section 7*,[1] but the State may search them

pursuant to a special inquiry judge (SIJ) subpoena based only on "'reason to suspect

crime or corruption,'"[2] provided that the subject of the search has *not yet been*

*charged with any crime*,[3] because *the Fourth Amendment* does not protect personal

banking records.[4]

Because SIJ subpoenas function similarly to federal grand jury subpoenas,

and because this case presents a question of first impression in Washington,[5] I agree

that we should look to Fourth Amendment case law to inform our analysis.[6] But we

---

[1] Majority at 8.

[2] Majority at 14 (quoting RCW 10.27.170).

[3] Majority at 19-20.

[4] Majority at 20.

[5] The majority cites three cases for the principle that "the authority of law to collect private records encompasses more than a warrant based on probable cause." Majority at 11 (citing *State v. Gunwall*, 106 Wn.2d 54, 68-69, 720 P.2d 808 (1986); *State v. Maxfield*, 133 Wn.2d 332, 342, 945 P.2d 196 (1997); *State v. Miles*, 160 Wn.2d 236, 247, 156 P.3d 864 (2007)). But the only one of these cases that actually addresses a subpoena—*Miles*—held that the subpoena was *not* valid "authority of law" under article I, section 7. 160 Wn.2d at 240, 247-48 (striking down statute that authorized state Securities Division to issue "administrative subpoena[s]"). Thus, this court has approved judicial subpoenas, like the one at issue in this case, only in dicta. There is no precedent from this court defining the permissible scope of such subpoenas.

[6] There are very few United States Supreme Court cases that directly address Fourth Amendment limits on federal grand jury subpoenas. The few cases that do directly address these limits hold that the Fourth Amendment prohibits any grand jury subpoena "too sweeping . . . 'to be regarded as reasonable.'" *United States v. Dionisio*, 410 U.S. 1, 11,

may do so only to the extent that federal precedent is consistent with the limits of

Washington's more protective article I, section 7. We may not rely on federal

precedent to conclude that article I, section 7 does not protect a privacy interest in

one's personal banking records. Nor may we rely, as the majority does, on federal

precedent addressing grand jury subpoenas in circumstances fundamentally different

---

93 S. Ct. 764, 35 L. Ed. 2d 67 (1973) (quoting *Hale v. Henkel*, 201 U.S. 43, 76, 26 S. Ct. 370, 50 L. Ed. 652 (1906), *overruled in part on other grounds by Murphy v. Waterfront Comm'n of N.Y. Harbor*, 378 U.S. 52, 66-67, 84 S. Ct. 1594, 12 L. Ed. 2d 678 (1964)); *see also United States v. R. Enters., Inc.*, 498 U.S. 292, 111 S. Ct. 722, 112 L. Ed. 2d 795 (1991) (interpreting Federal Rule of Criminal Procedure 17(c), which provides that "[o]n motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive"). Reeder argues that this federal standard is inconsistent with article I, section 7 because "[u]nlike the Fourth Amendment, article I, § 7 protects citizens against all warrantless searches, regardless of whether they are reasonable." Suppl. Br. of Pet'r at 12 (citing *State v. Eisfeldt*, 163 Wn.2d 628, 634-35, 185 P.3d 580 (2008)). Thus, he implicitly argues that Washington's constitution prohibits SIJ subpoenas in *all* circumstances.

Reeder is correct that this court has sometimes distinguished article I, section 7 protections on the basis that "[u]nlike in the Fourth Amendment, the word 'reasonable' does not appear in any form in the text of article I, section 7 of the Washington Constitution." *State v. Morse*, 156 Wn.2d 1, 9, 123 P.3d 832 (2005). We have relied on this difference to reject two federal exceptions to the warrant requirement: (1) the "good faith" exception (where an officer mistakenly but "reasonably" believes no warrant is necessary), *id.* at 9-10; and (2) the "private search doctrine" (where an individual consents to a search by a "private actor" who later informs police about what the "search" revealed). *Eisfeldt*, 163 Wn.2d at 635-38. But that distinction is not relevant here. Our state constitution clearly authorizes grand juries. WASH. CONST. art. I, § 26 ("No grand jury shall be drawn or summoned in any county, except the superior judge thereof shall so order."). Thus, as a matter of textual logic, the "authority of law" contemplated in article I, section 7 must include grand jury and other analogous subpoena powers. Because I agree with the majority and the Court of Appeals in this case that SIJ subpoena powers under RCW 10.27.170 are basically analogous to a grand jury's subpoena powers, I agree that federal precedent on the grand jury's subpoena power can inform our analysis.

from those present in this case (i.e., *United States v. R. Enters., Inc.*, 498 U.S. 292, 111 S. Ct. 722, 112 L. Ed. 2d 795 (1991), discussed *infra*).

Instead, we should rely on federal case law addressing circumstances analogous to those presented here: subpoenas for electronic communications and other digital data, issued to third party service providers. When I consult those cases, I conclude that an SIJ subpoena is insufficient "authority of law" under article I, section 7 of Washington's Constitution to support the search of an individual's personal banking records. I therefore respectfully dissent.

I. THE MAJORITY'S ANALYSIS CONFLICTS WITH FEDERAL PRECEDENT HOLDING THAT THE FOURTH AMENDMENT LIMITS GRAND JURY SUBPOENAS AND STATE PRECEDENT HOLDING THAT PERSONAL BANKING RECORDS ARE FULLY PROTECTED PRIVATE AFFAIRS

As noted above, the majority's analysis proceeds from two erroneous conclusions. First, the majority concludes that federal grand jury subpoenas may issue on less than probable cause "because the Supreme Court has noted that a subpoena issued by a federal grand jury intrudes less on one's privacy rights than a search or seizure and, as such, does not receive the same Fourth Amendment protections." Majority at 14-15 (citing *United States v. Dionisio*, 410 U.S. 1, 10, 93 S. Ct. 764, 35 L. Ed. 2d 67 (1973)). Second, the majority concludes that the privacy interest at stake in this case—the privacy interest in one's personal banking

records—is "different" from [i.e., lesser than] the privacy interest in one's DNA sample (addressed in *Garcia-Salgado*, 170 Wn.2d at 184). Majority at 20.

Contrary to the majority's first conclusion, *Dionisio* does not hold that grand jury subpoenas are "[do] not receive the same Fourth Amendment protections." Majority at 15. Instead, that case holds only that subpoenas to *appear* before a grand jury are not "seizures" for purposes of Fourth Amendment protections. *Dionisio*, 410 U.S. at 9. While the *Dionisio* Court upheld a grand jury's authority to subpoena a voice exemplar, it did not do so because grand jury subpoenas are free from Fourth Amendment constraints. It did so because the voice (unlike private records) is "constantly exposed to the public" and thus triggers no reasonable expectation of privacy. *Id.* at 14. In reaching that conclusion, the *Dionisio* Court expressly noted that "a grand jury subpoena is [*not*] some talisman that dissolves all constitutional protections." *Id.* at 11. And it explained that grand jury subpoena powers *are limited* at least by the First, *Fourth*, and Fifth Amendments." *Id.* at 11-12; *see also United States v. Miller*, 425 U.S. 435, 444, 96 S. Ct. 1619, 48 L. Ed. 2d 71 (1976) (subpoena for bank records does not violate rights of the investigation target "[*s*]*ince no Fourth Amendment interests of the* [*target*] *are implicated*" (emphasis added)).

Contrary to the majority's second conclusion, article I, section 7 is equally protective of an individual's privacy interest in personal banking records and his or

her privacy interest in DNA. The majority relies solely on federal Fourth Amendment precedent to conclude otherwise,[7] but that precedent conflicts with our case law applying article I, section 7. In *Miller*, the case on which the majority relies, the United States Supreme Court held that individuals retain *no* privacy interest *whatsoever* in their banking records since those records are held by a third party. 425 U.S. at 443 ("The depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government." (citing *United States v. White*, 401 U.S. 745, 751-52, 91 S. Ct. 1122, 28 L. Ed 453 (1971)). But *Miller* applied a Fourth Amendment doctrine—according to which "the Fourth Amendment does not prohibit the [government from] obtaining . . . information revealed to a third party"[8]—that this court has repeatedly rejected under article I, section 7.[9] We have consistently held that this third party search exception violates article I, section 7 protections because under our state constitution, individuals do not relinquish their privacy rights just by relying on common third party entities to store information or facilitate communication. *State v. Hinton*, 179 Wn.2d 862, 874,

---

[7] Majority at 20 (citing *Miller*, 425 U.S. at 443).

[8] *Miller*, 425 U.S. at 443 (citing *White*, 401 U.S. at 752; *Hoffa v. United States*, 385 U.S. 293, 302, 87 S. Ct. 408, 17 L. Ed. 2d 374 (1966); *Lopez v. United States*, 373 U.S. 427, 83 S. Ct. 1381, 10 L. Ed. 2d 462 (1963)).

[9] *E.g.*, *State v. Hinton*, 179 Wn.2d 862, 874, 319 P.3d 9 (2014).

319 P.3d 9 (2014) ("This court has consistently declined to require individuals to veil their affairs in secrecy and avoid sharing information in ways that have become an ordinary part of life."). Indeed, we have even rejected the third party search exception as applied to curbside *garbage*. *State v. Boland*, 115 Wn.2d 571, 576, 800 P.2d 1112 (1990) ("It would be improper to require that in order to maintain a reasonable expectation of privacy in one's trash . . . the owner must forgo use of ordinary methods of trash collection."). And in *State v. Miles*, we squarely rejected the exception as applied to bank records. 160 Wn.2d 236, 247-48, 156 P.3d 864 (2007). Of particular relevance here, our reasoning in *Miles* explains that banking records generally contain a significant amount of "sensitive personal information":

> Private bank records may disclose what the citizen buys, how often, and from whom. They can disclose what political, recreational, and religious groups a citizen supports. They potentially disclose where the citizen travels, their affiliations, reading materials, television viewing habits, financial condition, and more. Little doubt exists that banking records, because of the type of information contained, are within a person's private affairs.

*Id.* at 246-47. Nothing in this analysis suggests that article I, section 7 protects personal banking records to a lesser extent than it protects DNA or garbage—indeed, it suggests that our state constitution affords the highest level of protection for personal banking records.

7

II.  THE MAJORITY RELIES ON INAPPOSITE FEDERAL PRECEDENT TO CONCLUDE THAT THE SIJ SUBPOENA AT ISSUE IN THIS CASE WAS VALID WITHOUT PROBABLE CAUSE

The majority relies on one United States Supreme Court decision—*R. Enterprises,* 498 U.S. 292—to conclude that "'the Government cannot be required to justify the issuance of a grand jury subpoena by . . . establish[ing] probable cause because the very purpose of requesting the information is to ascertain whether probable cause exists.'" Majority at 14 (quoting *R. Enters.,* 498 U.S. at 297). But two factors make *R. Enterprises* entirely inapposite here.

First, *R. Enterprises* did not address privacy interests like those at issue in this case—indeed, it did not really address privacy interests at all. The corporate defendants in *R. Enterprises*—all under investigation for allegedly transporting obscene materials across state lines—challenged a grand jury subpoena for corporate records and sexually explicit videotapes. *In re Grand Jury 87-3 Subpoena Duces Tecum,* 884 F.2d 772 (4th Cir. 1989), *rev'd in part by R. Enterprises,* 489 U.S. at 297. With respect to the corporate records, the Fourth Circuit Court of Appeals held that the subpoena was "unreasonable and oppressive'" in violation of Federal Rule of Criminal Procedure (FRCP) 17(c) because the government had not met the "relevancy, admissibility, and specificity" requirements established for *trial* subpoenas in *United States v. Nixon,* 418 U.S. 683, 699-700, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974). *R. Enters.,* 498 U.S. at 296-97. With respect to the videotapes,

8

the circuit court rejected the defendants' hybrid First Amendment/Fourth Amendment[10] argument, *Grand Jury 87-3*, 884 F.2d at 778, but only after noting (in an earlier ruling) that "[c]orporations *do not have the equivalent privacy rights* of individuals," *In re Grand Jury Subpoena: Subpoena Duces Tecum*, 829 F.2d 1291, 1299 n.11 (4th Cir. 1987) (emphasis added). The United States Supreme Court ultimately granted certiorari only as to the corporate records and held that the *Nixon* criteria do not apply to grand jury subpoenas. *R. Enters.*, 498 U.S. at 296-97. In reaching that conclusion, the Court discussed grand jury subpoenas generally and stated that they do not require a showing of probable cause. *Id.* at 297. But the purpose of this discussion was to highlight the difference, from the *government's perspective*, between subpoenas issued before and after the decision to charge. *See id.* at 300 ("[o]ne simply cannot know in advance whether information sought during an investigation will be relevant and admissible in a [subsequent] prosecution"). *R. Enterprises* contains absolutely no discussion whatsoever of any privacy interests held by the subject of a grand jury investigation. (In fact, the Court remanded on what it called "the First Amendment issue." *Id.* at 303 ("We express no view on this issue and leave it to be resolved by the Court of Appeals.").)

---

[10] U.S. CONST. amends. I, IV.

Second, the analysis in *R. Enterprises* is premised on a fact not present here: the issuance of the subpoena directly to the subject of the investigation. The *R. Enterprises* Court held that a person seeking to avoid compliance with a grand jury subpoena bears the burden of showing that compliance would be unreasonable. *Id.* at 301. In reaching that conclusion, the Court acknowledged that "reasonableness" limits on grand jury subpoenas are meaningless if the target of an investigation does not know the general subject matter of the grand jury's investigation. *Id.* at 301-02 ("[a]fter all, a subpoena recipient 'cannot put his whole life before the court in order to show that there is no crime to be investigated'" (quoting *Marston's, Inc. v. Strand*, 114 Ariz. 260, 270, 560 P.2d 778 (1977) (Gordon, J., specially concurring in part and dissenting in part)). The Court went so far as to suggest that "the Government [might be required] to reveal the general subject of the grand jury's investigation before requiring the challenging party to carry its burden of persuasion." *Id.* at 302. In this case, Reeder did not know that any SIJ subpoena had issued at all until 13 different financial institutions had already furnished the State with his personal records. Majority at 3-4.

In short, the facts in *R. Enterprises* differ so extremely from those present here that that case is simply not helpful to our analysis. (To the extent that its discussion of reasonableness limits is relevant at all, it supports Reeder's position.)

III. THE MOST RELEVANT FEDERAL PRECEDENT SUGGESTS THAT THE SIJ SUBPOENA IN THIS CASE WAS THE EQUIVALENT OF A FULL SEARCH AND, AS SUCH, COULD NOT ISSUE ABSENT A SHOWING OF PROBABLE CAUSE

Federal precedent distinguishing grand jury subpoenas from search warrants—and permitting the former to issue on less than probable cause—is predicated in part on the assumption that the subject of an investigation will have the opportunity to contest the validity of a subpoena:

> Subpoenas are not search warrants. They involve different levels of intrusion on a person's privacy. A search warrant allows the officer to enter the person's premises, and to examine for himself the person's belongings. The officer, pursuant to the warrant, determines what is seized. Moreover, if evidence or contraband of any sort is in plain sight, the officer may seize it, even if it is not listed in the warrant. The person to be searched has no lawful way to prevent execution of the warrant.

*In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 854 (9th Cir. 1991) (citation omitted) (citing *Arizona v. Hicks*, 480 U.S. 321, 326, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987)). In other words, grand jury subpoenas may issue on less than probable cause only because they do not entail the kind of immediate, unavoidable, and relatively open-ended intrusion into an individual's zone of privacy that a search warrant authorizes.[11]

---

[11] *In re Subpoena Duces Tecum*, 228 F.3d 341, 348 (4th Cir. 2000) ("the immediacy and intrusiveness of a search and seizure conducted pursuant to a warrant demand the safeguard of demonstrating probable cause to a neutral judicial officer before the warrant issues, whereas the issuance of a subpoena initiates an adversary process that can command the production [*by the owner*] of documents and things only after judicial process is afforded").

For this reason, "[s]ervice of a forthwith subpoena [cannot] authorize an entry into a private residence." *Id.* at 854. The State acknowledged as much at oral argument in this case,[12] but it insisted that article I, section 7 permits subpoenas for personal banking records because the *Fourth Amendment* does not recognize any privacy interest in documents held by a third party.[13] In other words, the State argued that this court should import into its case law on investigative subpoenas the very same third party search exception (discussed in section I *supra*) that we have consistently rejected in our cases addressing other exceptions to the warrant requirement. *See Hinton*, 179 Wn.2d at 874; *Miles*, 160 Wn.2d at 245-46 (citing *State v. Gunwall*, 106 Wn.2d 54, 67, 720 P.2d 808 (1986)).

That result, which the majority adopts, is illogical. Not only does it conflict with our precedent rejecting the relaxation of privacy protections in the third party search context and affirming the significant privacy interests that attach to personal

---

[12] Wash. Supreme Court oral argument, *State v. Reeder*, No. 90577-1 (Feb. 24, 2015), at 15 min., 15 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. (conceding that the government may not search "your home, your car, your person, your body" absent probable cause). This appears to conflict with another theory that the State articulated in its briefing and the majority endorses in its analysis: that "the Fourth Amendment has [no] application in the grand jury context," State's Suppl. Br. at 5 (footnote omitted).

[13] Wash. Supreme Court oral argument, *supra*, at 15 min. 15 sec., 20 min. 45 sec.

12

banking records under article I, section 7, it also inverts the logic of cases upholding federal grand jury subpoenas. Those cases say that subpoenas are less intrusive than search warrants in part because the subpoena recipient can object and obtain judicial review. *In re Subpoena Duces Tecum*, 228 F.3d 341, 348 (4th Cir. 2000); *Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d at 854. But that protection evaporates when the subpoena issues secretly to a third party. *See In re Grand Jury Subpoena Served upon Niren*, 784 F.2d 939, 941 (9th Cir. 1986) (noting that third party subpoena recipient "cannot be expected to risk a contempt citation in order to protect the interests of a powerless [investigation target]"). It makes no sense to rely on the presence of a disinterested third party intermediary to *uphold* the subpoena in this case.

Indeed, federal case law addressing subpoenas for digital communications held by third parties reaches the opposite conclusion. In *United States v. Warshak*, the Sixth Circuit held that provisions in the Stored Communications Act, 18 U.S.C. §§ 2701-2711, authorizing government agents to obtain e-mail communications from a third party through an administrative or grand jury subpoena, violate Fourth Amendment protections. 631 F.3d 266, 285-88 (6th Cir. 2010). The court reasoned that "a subscriber enjoys a reasonable expectation of privacy in the contents of e[-]mails" stored with a commercial internet service provider and that the government

may not, therefore, use a subpoena to circumvent the Fourth Amendment's probable cause requirement. *Id.* at 288. In other words, the court held that when the government seeks to obtain e-mail from a third party service provider, it undertakes a full *search*, which it may accomplish only by means of a warrant supported by probable cause. *Id.*; *see also In re Application for Tel. Info. Needed for Criminal Investigation*, No. 15-XR-90304-HRL-1(LHK), __ F. Supp. 3d __, 2015 WL 4594558 (N.D. Cal. July 29, 2015) (holding that government must obtain a warrant to access historical cell site location information), *appeal filed*, No. 15-16760 (9th Cir. Sept. 3, 2015); Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 GEO. WASH. L. REV. 1208, 1220 n.80 (2004) (noting that "the constitutionality of [the Stored Communications Act's subpoena provisions] is unclear"). (I note that law enforcement in Washington also routinely obtains warrants for digital data stored with internet service providers. *E.g.*, *State v. Budd*, 186 Wn. App. 184, 189, 347 P.3d 49 (describing detective serving search warrant on Yahoo! and Google in order to obtain suspect's Internet protocol address), *review granted*, 183 Wn.2d 1014, 353 P.3d 641 (2015). There is nothing inherently onerous about this procedure.)

Unquestionably, the State's conduct at issue in this case also constitutes a full search. Under article I, section 7, personal banking records are entitled to no less

protection than e-mails or text messages (or garbage, for that matter). Like e-mail and text messages, those records can reveal a person's habits, associations, religious beliefs, political views, travel history and plans, and financial condition, among other things. *Miles*, 160 Wn.2d at 246-47. Because bank records contain such sensitive information, this court has held that they trigger a reasonable expectation of privacy, notwithstanding their retention by third party institutions. *Id.* at 244-45. When the State obtained Reeder's personal banking records—affording him no notice whatsoever—it violated this expectation. It therefore conducted a full search of his private affairs.

## CONCLUSION

Consistent with our case law rejecting the third party search doctrine and federal case law distinguishing (highly intrusive) search warrants from (less intrusive) subpoenas, I would hold that the SIJ subpoena in this case violated article I, section 7 protections. I would hold that issuance of a subpoena to a third party to obtain the records of the target of an investigation violates article I, section 7 protections where, as here, the article I, section 7 interest at stake is in personal, private bank records. Under controlling Washington precedent, such personal,

private records are entitled to the full measure of privacy that we accord to garbage

and infrared emissions.[14] I therefore respectfully dissent.

---

[14] *See State v. Young*, 123 Wn.2d 173, 182-84, 867 P.2d 593 (1994) (use of infrared thermal detection device transformed public police surveillance into "search" requiring a warrant).