[No. 44924-9-I.   Division One.   August 28, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. VERNON L. TURNER, *Appellant*.

*Cheryl D. Aza* (of *Washington Appellate Project*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Catherine M. Meyers, Deputy*, for respondent.

Cox, J. — Vernon Turner appeals his three convictions of first degree theft. The charges were based on a series of unauthorized payments from his employer's bank accounts and purchases on his employer's credit card. These events occurred over a period of 10 months. The State's multiple charges under the first degree theft statute were based on variations in the methods by which Turner allegedly stole the funds. Turner claims that the multiple convictions for violation of the same statute subjected him to double jeopardy under the state and federal constitutions. We agree.

The theft statute is ambiguous as to the unit of prosecution for theft by different schemes or plans against the same victim over the same period of time. Thus, the rule of lenity dictates that the multiple convictions in this case cannot stand because they violate double jeopardy. Accordingly, we reverse two of Turner's three convictions.

Vernon Turner worked at Washington Citizen Action (WCA) as its financial director from June 1997 until March 1998. In that position, Turner was responsible for administering payroll, paying bills, and preparing financial statements. Within a few months of Turner assuming his duties, his supervisor, David West, noticed discrepancies in the financial statements Turner prepared. Based on these discrepancies, West ordered an independent investigation of the financial records.

Prior to the investigation, Turner took a medical leave. He never returned to work.

From the investigation of financial records, it appeared that Turner had stolen from WCA in several ways. First, he made a series of unauthorized payments in varying amounts to himself from WCA's payroll accounts. Second, he made unauthorized payments to another person from the payroll accounts. Third, he made unauthorized payments to himself from a nonpayroll checking account. Finally, he made a series of unauthorized purchases with WCA's credit card. In all, there appeared to have been 72 individual acts of theft.

The State initially charged Turner with one count of first degree theft for all 72 alleged thefts. At the time of trial and over Turner's objection, the trial court granted the State's motion to amend the information to four counts of first degree theft. The variations in the counts were based on the different methods by which Turner allegedly stole from WCA. A jury found Turner guilty of three of the four counts.[1] At sentencing, the trial court concluded that Turn-

---

[1] The three counts of the amended information on which Turner was convicted state in relevant part:

er's convictions did not constitute the same criminal conduct and sentenced him to concurrent sentences within the standard range.

Turner appeals.

## Double Jeopardy

Turner argues that his convictions of two of the three counts of first degree theft violate state and federal constitutional guarantees against double jeopardy. We agree. ■ ■ The double jeopardy clause of the Fifth Amend-

---

### Count I

That [Turner] . . . during a period of time intervening between June 1, 1997, through April 1, 1998, through a series of transactions pursuant to a common scheme or plan, as part of a continuing course of conduct and continuing criminal impulse pursuant to the execution of a general larcenous scheme or plan, with intent to deprive another of property, to-wit: United States currency, *did exert unauthorized control over such property belonging to [WCA], by paying Vernon L. Turner unauthorized salary increases and bonuses*, that the value of such property did exceed $1,500;

### Count III

That [Turner] . . . during a period of time intervening between June 1, 1997, through April 1, 1998, through a series of transactions pursuant to a common scheme or plan, as part of a continuing course of conduct and continuing criminal impulse pursuant to the execution of a general larcenous scheme or plan, with intent to deprive another of property, to-wit: United States currency, *did exert unauthorized control over such property belonging to [WCA], by writing unauthorized checks to Vernon L. Turner and Rita Joseph, a.k.a. Rita Turner, from [WCA's] corporate account*, that the value of such property did exceed $1,500;

### Count IV

That [Turner] . . . during a period of time intervening between June 1, 1997, through April 1, 1998, through a series of transactions pursuant to a common scheme or plan, as part of a continuing course of conduct and continuing criminal impulse pursuant to the execution of a general larcenous scheme or plan, with intent to deprive another of property, to-wit: United States currency, *did exert unauthorized control over such property belonging to [WCA], by making unauthorized credit card purchases*, that the value of such property did exceed $1,500[.]

(Emphasis added.)

ment offers three separate constitutional protections.[2] It protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.[3] The State constitutional rule against double jeopardy offers the same scope of protection as its federal counterpart.[4]

■ Turner did not raise below the double jeopardy argument. Rather, his objection to the trial amendment from one count to multiple counts was based on the fact that multiple convictions would increase his offender score.[5] But he may raise this issue for the first time on appeal because it is a manifest error affecting his constitutional right to be free from double jeopardy.[6]

■ The aspect of double jeopardy at issue here protects a defendant from being punished multiple times for the same offense.[7] When a person is charged with violating the same statutory provision a number of times, multiple convictions can withstand double jeopardy challenge only if each is a separate "unit of prosecution."[8] The proper inquiry for considering double jeopardy challenges is what "unit of prosecution" the Legislature intends as a punishable act under the statute.[9] In making this determination, we apply

---

[2] *State v. Adel*, 136 Wn.2d 629, 632, 965 P.2d 1072 (1998) (citing *State v. Gocken*, 127 Wn.2d 95, 100, 896 P.2d 1267 (1995)).

[3] *Gocken*, 127 Wn.2d at 100 (citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 726, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989)).

[4] *Adel*, 136 Wn.2d at 632.

[5] Report of Proceedings (May 6, 1999) at 3-4.

[6] RAP 2.5(a); *Adel*, 136 Wn.2d at 631-32.

[7] *Adel*, 136 Wn.2d at 632.

[8] *Id.* at 633-34 (citing *Bell v. United States*, 349 U.S. 81, 83, 75 S. Ct. 620, 99 L. Ed. 905 (1955)).

[9] *Adel*, 136 Wn.2d at 634; *State v. Bobic*, 140 Wn.2d 250, 261, 996 P.2d 610 (2000).

the rules of statutory construction to the statute at issue.[10] If there is any ambiguity, then "the ambiguity should be construed in favor of lenity."[11]

Here, the State charged Turner with multiple counts of first degree theft. That crime must involve property or services exceeding $1,500 in value.[12] Turner maintains that the first degree theft statute is unclear whether multiple thefts by different schemes or plans from the same person and over the same period of time may be punished more than once. Citing *Adel*, Turner argues that the rule of lenity dictates that the ambiguity in the theft statutes should be resolved in his favor.[13]

In response, the State argues that its discretion under former RCW 9A.56.010(17)(c) (1998) to aggregate various third degree thefts to first degree theft[14] demonstrates that the relevant unit of prosecution here is each of the multiple schemes or plans under which Turner stole funds. Under that theory, the State argues that Turner's theft of funds from the payroll account is distinct from his theft from the nonpayroll account. And, according to the State, each of these first degree thefts is, in turn, distinct from the theft by the unauthorized use of WCA's credit card.

The first step in determining the unit of prosecution is to

---

[10] *Adel*, 136 Wn.2d at 634.

[11] *Id.* at 634-35.

[12] RCW 9A.56.030(1)(a).

[13] *Adel*, 136 Wn.2d at 635 (where the statute fails to indicate whether the Legislature intended to punish a person multiple times for simple possession based on the controlled substance being found in multiple places, lenity dictates that only one count of possession is permitted).

[14] Former RCW 9A.56.010(17)(c) (1998), which was amended to what is now RCW 9A.56.010(18)(c) provides:

Whenever any series of transactions which constitute theft, would, when considered separately, constitute theft in the third degree because of value, and said series of transactions are a part of a common scheme or plan, then the transactions may be aggregated in one count and the sum of the value of all said transactions shall be the value considered in determining the degree of theft involved.

examine the statute in question.[15] The first degree theft statute, RCW 9A.56.030, provides in part that "[a] person is guilty of theft in the first degree if he or she commits theft of . . . [p]roperty or services which exceed(s) one thousand five hundred dollars in value."[16]

RCW 9A.56.020(1)(a) defines "theft" as:

> To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or services . . . .

The relevant portion of RCW 9A.56.010(19)(b) defines "exerts unauthorized control" as:

> (b) Having any property or services in one's possession, custody or control as . . . employee . . . of any person, estate, association, or corporation, . . . *to secrete, withhold, or appropriate the same to his or her own use or to the use of any person other than the true owner or person entitled thereto.*[17]

█ The plain words of the above statutory provisions make clear that the unit of prosecution for first degree theft by an employee from an employer under these circumstances is the employee's exertion of unauthorized control over the property of the employer, where the property exceeds $1,500 in value. The only distinction between the varying degrees of theft is the value of property stolen. Thus, the unit of prosecution for first degree theft is distinguished from that of either second degree or third degree theft by the value of the property or services in question.[18] Neither party appears to dispute this aspect of the unit of prosecution for first degree theft.

The dispute between the parties appears to be centered on whether the Legislature intended multiple punishments

---

[15] *Adel*, 136 Wn.2d at 635; *State v. Tili*, 139 Wn.2d 107, 113, 985 P.2d 365 (1999).

[16] RCW 9A.56.030(1)(a).

[17] (Emphasis added.)

[18] *But see Tili*, 139 Wn.2d at 113-14 (noting that parallel construction of the statutes for various degrees of rape dictates that the "unit of prosecution" for rape remains the same for the various degrees of rape).

for thefts by different schemes or plans over the same period of time from the same victim. In this respect, the question here is similar to that posed in *Adel*.[19] There, the question was whether the Legislature intended multiple prosecutions for drug possession based on an illegal drug being found in multiple places at the same time. We conclude that the Legislature's intent in this case is unclear.

Our examination of the theft statute reveals that the Legislature intended to punish first degree theft as a more serious crime than second degree or third degree theft. The former is a Class B felony, while second degree theft is a Class C felony and third degree theft is a misdemeanor. In making these distinctions, the Legislature focused on the value of the property and services to define the level of seriousness of the crime. The first degree theft statute makes no mention of schemes or plans in distinguishing the seriousness of the crime from other degrees of theft. And there is no wording in the statute that indicates any other relevant distinction between multiple acts of theft committed against the same person over the same period of time.[20]

We conclude that the lack of clarity creates ambiguity whether multiple schemes or plans constitute separate units of prosecution under the first degree theft statute. Thus, the rule of lenity dictates that we construe this ambiguity in favor of Turner.

■ Nevertheless, the State contends that former RCW 9A.56.010(17)(c) (1998) defines the unit of prosecution for first degree theft. This argument is not persuasive. That statute states:

> Whenever any series of transactions which constitute theft, would, when considered separately, constitute theft in the third degree because of value, and said series of transactions are a part of a common scheme or plan, then the transactions may be aggregated in one count and the sum of the value of all said

---

[19] *State v. Adel*, 136 Wn.2d 629, 965 P.2d 1072 (1998).

[20] *See Tili*, 139 Wn.2d at 114 (holding that the statutory definition of sexual intercourse indicated that any single act constituted sexual intercourse, making separate acts in the context of a rape charge separate units of prosecution).

transactions shall be the value considered in determining the degree of theft involved.

The statute allows the State, in its discretion, to aggregate the values of individual acts of third degree theft to determine the value of a higher degree theft charge, where the individual thefts are part of a common scheme or plan.[21] We read the statute to vest discretion in the prosecutor to increase the degree of the theft charge, not to define what the Legislature intended as the punishable act of first degree theft.[22] The State's argument confuses the critical distinction between a prosecutor exercising discretion to aggregate third degree thefts to either a first or second degree theft charge and the Legislature's intent in defining the punishable act. We note that the unit of prosecution analysis is designed in part to avoid overzealous charging by the prosecution.[23] While the record shows that the prosecutor here sought to divide the acts of theft into schemes or plans for clarity of presentation to the jury, not in a fit of prosecutorial zeal, the reason for the rule applies with equal force here. We seriously doubt that the Legislature could have intended to delegate to the prosecution the discretion to define the punishable act in this way.[24]

Citing a Wisconsin case, *State v. Davis*,[25] the State maintains that the proper unit of prosecution here is each of the three common schemes or plans under which it aggregated multiple counts of third degree theft to first degree theft counts. But *Davis* is distinguishable.

---

[21] *See State v. Hoyt*, 79 Wn. App. 494, 496-97, 904 P.2d 779 (1995) (under former RCW 9A.56.010(12)(c) (1975), *review denied*, 129 Wn.2d 1004 (1996), a series of third degree thefts committed pursuant to a common scheme or plan may be aggregated into a single count of either first degree theft or second degree theft).

[22] *Adel*, 136 Wn.2d at 634 (the unit of prosecution refers to the act or course of conduct the Legislature defined as punishable).

[23] *See id.* at 635.

[24] *See Sanabria v. United States*, 437 U.S. 54, 69, 98 S. Ct. 2170, 57 L. Ed. 2d 43 (1978) (Congress, not the prosecutor, establishes and defines offenses).

[25] 171 Wis. 2d 711, 492 N.W.2d 174, *review denied*, 494 N.W.2d 210 (1992).

There, Leola Davis opened a telephone account under a false name and obtained services under that account.[26] More than a month later, she opened another account using a different false name.[27] The conviction was on two counts of obtaining telephone service by fraud.

On appeal, Davis argued that her two convictions violated double jeopardy because there was only one scheme to obtain telephone services in the name of others.[28] In upholding her convictions, the Wisconsin appellate court held that the unit of prosecution under the telecommunications service theft statute is each separate plan or scheme to obtain telecommunications service by fraud.[29] That statute specifically provides that "any . . . contrivance . . . or means to avoid payment" as the unit of prosecution.[30]

In contrast, Washington's first degree theft statute does not expressly define the unit of prosecution. Rather, our theft statute is ambiguous as to whether multiple theft schemes or plans over the same period of time and against the same victim may be punished separately.

The State also relies on additional authority, none of which is persuasive. The State cites *State v. Bobic*,[31] where our Supreme Court held that Bobic's multiple conspiracy convictions violated double jeopardy because the unit of prosecution for conspiracy is an agreement and an overt act in furtherance of that agreement rather than the specific criminal objective of the conspiracy.[32] The State appears to argue that like the unit of prosecution for conspiracy, the unit of prosecution for first degree theft is not the criminal

---

[26] 492 N.W.2d 176.

[27] *Id.*

[28] *Id.*

[29] *Id.* at 177-78.

[30] WIS. STAT. § 943.45(1)(e) states that "[n]o person may intentionally obtain . . . telecommunications service . . . by . . . *[a] contrivance . . . or means* to avoid payment of the lawful charges . . . ." (emphasis added).

[31] 140 Wn.2d 250, 996 P.2d 610 (2000).

[32] *Id.* at 265-66.

objective to steal but rather any scheme to steal. But conspiracy is not at issue. Thus, *Bobic* does not apply.

In supplemental briefing, the State cites *State v. Carosa*[33] and *State v. Hoyt.*[34] While each case involves multiple thefts, neither case addresses the double jeopardy issue that we consider here. Thus, they are inapposite.

We do not address whether the State was free to charge 72 individual counts of theft in this case.

Because of our resolution of the double jeopardy issue, we need not reach the question of whether the court erred by determining that the multiple counts did not constitute the same criminal conduct.

In sum, viewing the theft statute as a whole, we conclude that former RCW 9A.56.010(17)(c) (1998) does not define the unit of prosecution for first degree theft.[35]

We reverse the convictions on two of the three counts and remand for resentencing in accordance with this opinion.

WEBSTER and BAKER, JJ., concur.

After modification, further reconsideration denied October 13, 2000.
Review denied at 143 Wn.2d 1009 (2001).

---

[33] 83 Wn. App. 380, 921 P.2d 593 (1996).

[34] 79 Wn. App. 494, 904 P.2d 779 (1995).

[35] *State v. Hansen*, 122 Wn.2d 712, 717, 862 P.2d 117 (1993) (courts determine legislative intent not by unduly emphasizing any one section of a statute but rather by examining the statute as a whole).