FILED
APRIL 26, 2016
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32599-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MEGHAN BRADFORD SANDVIG, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Meghan Sandvig, a first time offender who pleaded guilty to 30 counts of first degree theft, appeals her exceptional sentence of 90 months. She asserts that the 30 transactions should be considered a single unit of prosecution and that as a result, the sentence violates double jeopardy principles. Under *State v. Reeder*, 184 Wn.2d 805, 365 P.3d 1243 (2015), because the 30 transactions occurred at separate times, we hold the charges do not constitute a single unit of prosecution and Ms. Sandvig's sentence does not violate double jeopardy principles.

Ms. Sandvig also argues the sentencing court erred when it imposed an exceptional sentence. Because Ms. Sandvig stipulated to the facts that supported the aggravating factor and the factors the court relied on were proper, Ms. Sandvig's exceptional sentence is upheld. Next, Ms. Sandvig challenges the $100 monthly

restitution payment she was ordered to make after her release from incarceration. We find that the court did not abuse its discretion. Finally, for the first time on appeal, Ms. Sandvig challenges the court's imposition of discretionary legal financial obligations (LFOs). Ms. Sandvig failed to preserve this argument for review, but because the court indicated that it was unlikely Ms. Sandvig would be able to repay the restitution, we choose to exercise our discretion and remand with instructions for the sentencing court to strike the obligations.

## FACTS

Meghan Sandvig was charged with 30 counts of first degree theft. The charging information alleged that Ms. Sandvig, in her capacity as bookkeeper for Premier Paint, transferred more than $5,000 of business funds to her own personal account on each of 30 occasions between June 10, 2011 and September 27, 2013.[1] Each of the 30 counts is associated with a different date of transaction.

The information also alleged two aggravating factors. The first factor alleged that Ms. Sandvig committed multiple current offenses, and that the resulting high offender score would result in numerous current offenses going unpunished. The second factor

---

[1] Although she was only charged with crimes between this time period, Ms. Sandvig's plea agreement acknowledges that she began stealing from her employer nearly two years earlier, in September 2009. Because the information was cumbersome enough as it was, the State chose to limit the information to the 30 counts rather than allege all the thefts.

alleged that the crime was a major economic offense "because it involved multiple incidents per victim, it involved actual monetary loss substantially greater than typical for the offense, and [Ms. Sandvig] used her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense." Clerk's Papers (CP) at 28.

Ms. Sandvig pleaded guilty as charged. She stipulated that the facts support the aggravating factors, but argued that an exceptional sentence was not appropriate.

At sentencing, Ms. Sandvig spoke to the court.

> I would like to make amends for my actions. It was an inexcusable lapse in judgment and moral behavior. I know that stealing is wrong. I am extremely ashamed of my actions and I will never repeat them.
> I want to be a productive member of society and give back in a meaningful way.

Report of Proceedings (RP) at 67.[2]

The court determined the 30 counts were not part of the same criminal conduct, and sentenced Ms. Sandvig using an offender score of nine. Then, the court determined that the facts supported and warranted an exceptional sentence for the reasons offered by the State. The court sentenced Ms. Sandvig to 90 months of incarceration, explaining that the "idea [was] three months per count." RP at 73.

---

[2] In fact, Ms. Sandvig's attorney represented: "She is—she is willing to sell whatever equity in her house to pay them back. She's willing to do whatever she can to try and—and make up for the wrongs that she's done. . . . [S]he's doing what she can to be held accountable." RP at 59-60.

3

While the court did not order restitution at sentencing, explaining there would be a restitution hearing later, the court noted that the State was alleging over $577,000 in restitution damages. The court ordered that upon release from incarceration, Ms. Sandvig make monthly payments in the amount of $100 toward the restitution. The court noted that Ms. Sandvig would likely never be able to repay the restitution.

Also at sentencing, the court imposed LFOs in the amount of $850. Of those costs, $250 were discretionary and were imposed without the court making an individualized inquiry into Ms. Sandvig's present or likely future ability to pay. Ms. Sandvig did not object.

Ms. Sandvig appeals.

## ANALYSIS

On appeal, Ms. Sandvig argues her sentence violates principles of double jeopardy. She also contends the court erred in imposing an exceptional sentence because one of the aggravating factors relied on takes into account the multiplicity of incidents and further because the sentence is clearly excessive. Finally, Ms. Sandvig challenges the court's imposition of discretionary LFOs as well as the court's order that she pay $100 a month toward restitution.

### Double jeopardy—unit of prosecution

Ms. Sandvig argues that her multiple convictions violate double jeopardy principles because the 30 convictions constitute a single unit of prosecution.

4

Claims of double jeopardy are questions of law, which we review de novo. *State v. Hughes*, 166 Wn.2d 675, 681, 212 P.3d 558 (2009). "The double jeopardy clause of the Fifth Amendment and the state constitutional protection against double jeopardy, article I, section 9, offer the same scope of protection." *Reeder*, 184 Wn.2d at 825 (citing *State v. Adel*, 136 Wn.2d 629, 632, 965 P.2d 1072 (1998)). The scope of protection encompasses three distinct aspects: (1) it protects against a second prosecution for the same offense after acquittal, (2) it protects against a second prosecution for the same offense after conviction, and (3) it protects against multiple punishments for the same offense. *Id.* Ms. Sandvig alleges her convictions violate the third aspect of double jeopardy.

"When a person is charged with violating the same statutory provision a number of times, multiple convictions can withstand [a] double jeopardy challenge only if each is a separate 'unit of prosecution.'" *State v. Turner*, 102 Wn. App. 202, 206, 6 P.3d 1226 (2000); *State v. Hall*, 168 Wn.2d 726, 730, 230 P.3d 1048 (2010); *see also Reeder*, 184 Wn.2d at 825 (quoting *Adel*, 136 Wn.2d at 634). The unit of prosecution encompasses the entire scope of the criminal act as the act is defined by the legislature. *Id.* The approach to analyzing the unit of prosecution is well settled:

> [T]he first step is to analyze the statute in question. Next, we review the statute's history. Finally, we perform a factual analysis as to the unit of prosecution because even where the legislature has expressed its view on the unit of prosecution, the facts in a particular case may reveal more than one "unit of prosecution" is present.

5

*State v. Varnell*, 162 Wn.2d 165, 168, 170 P.3d 24 (2007).

A person is guilty of theft in the first degree if she commits theft of property "which exceed(s) five thousand dollars in value." RCW 9A.56.030(1)(a). "Theft" is the wrongful exertion of "unauthorized control over the property . . . of another . . . with intent to deprive him or her of such property." RCW 9A.56.020(1)(a). The plain language of the statutes makes clear that the unit of prosecution for first degree theft is the unauthorized exertion of control over the property of another which exceeds $5,000 in value. *See Turner*, 102 Wn. App. at 208.

Despite this, Ms. Sandvig argues that Washington's first degree theft statute does not define the unit of prosecution and is therefore ambiguous as to whether multiple acts of theft which are part of an ongoing plan can be punished separately. In support of this argument, she cites *Turner*, 102 Wn. App. 202.

In *Turner*, the State charged the defendant, who had stolen from his employer in several different ways, with multiple counts of first degree theft. It achieved multiple first degree theft charges by aggregating transactions by "schemes or plans," charging e.g., theft of funds from a payroll account as one scheme, theft from nonpayroll accounts as another, and unauthorized use of credit cards as a third. 102 Wn. App. at 207. The court determined that Washington's theft statute "is ambiguous as to whether multiple theft schemes or plans over the same period of time and against the same victim may be

6

punished separately." *Id.* at 211. Applying the rule of lenity, the court concluded that Mr. Turner's convictions violated double jeopardy principles. *Id.* at 209.

Without overruling *Turner*, the Washington State Supreme Court in *Reeder* determined that the first degree theft statute was not ambiguous as it relates to the ability to charge a defendant with separate transactions occurring at separate times. It concluded that double jeopardy was not implicated where the defendant was charged with 14 individual counts of first degree theft, based on 14 separate transactions, which occurred on separate occasions over a span of 16 months. *Reeder*, 184 Wn.2d at 829-30.

Here, like the defendant in *Reeder*, each of the 30 counts that Ms. Sandvig was convicted of occurred at separate times. The information alleged that on 30 distinct occasions, Ms. Sandvig stole property worth over $5,000 in value. The information alleged the specific date of each transaction. It was within the prosecuting attorney's discretion to charge Ms. Sandvig with the 30 counts. *Id.* at 828. ("Prosecuting attorneys generally have discretion in deciding whether to aggregate the crimes or to charge them separately.").[3]

---

[3] To the extent Ms. Sandvig is arguing that under *State v. Dash*, 163 Wn. App. 63, 259 P.3d 319 (2011) her thefts should constitute a single taking because they make up a single continuing impulse, the *Reeder* court rejected this argument. *Reeder*, 184 Wn.2d at 829-30 (noting that the issue in *Dash* was whether a defendant could be convicted of successive takings when the jury was not required to determine at what point the defendant's criminal impulse terminated and, therefore, it was unknown whether the jury convicted the defendant on criminal acts outside of the statute of limitations).

*Exceptional sentence*

Ms. Sandvig next challenges the court's imposition of an exceptional sentence.

Sentences must generally fall within the standard sentence range established by the Sentencing Reform Act of 1981. RCW 9.94A.505(2)(a)(i). The court may impose a sentence outside the standard range for an offense if it finds "that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. An aggravated sentence is appropriate when certain aggravating factors have been determined. *Id.*

The court found the existence of two aggravating factors justifying an exceptional sentence of 90 months incarceration. It relied on the facts that: (1) Ms. Sandvig committed multiple current offenses and her high offender score resulted in some of the current offenses going unpunished, and (2) "the current offense was a major economic offense because it involved multiple incidents per victim, it involved actual monetary loss substantially greater than typical for the offense, and the defendant used her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense." CP at 94.

We review (1) whether the record supports the finding on the aggravating circumstances under the clearly erroneous standard, (2) whether, as a matter of law, the reasons justify an exceptional sentence under a de novo standard, and (3) whether the sentence is clearly excessive or too lenient under an abuse of discretion standard. *State v.*

8

*Hale*, 146 Wn. App. 299, 307-09, 189 P.3d 829 (2008); *State v. Law*, 154 Wn.2d 85, 93, 110 P.3d 717 (2005). "[T]he sentencing judge's reasons for imposing . . . a sentence outside the presumptive range" must "'take into account factors other than those which are necessarily considered in [determining] the presumptive range for the offense.'" *State v. Fisher*, 108 Wn.2d 419, 423, 739 P.2d 683 (1987) (quoting *State v. Nordby*, 106 Wn.2d 514, 518, 723 P.2d 1117 (1986)).

Ms. Sandvig argues that the court erred in relying on the aggravating factor that the crime was a "major economic offense" because it involved multiple incidents per victim, a fact already taken into account through the range associated with her offender score. But as the State points out, while the offender score-based range takes into consideration 10 incidents, it fails to account for the other 20. And the court determined that the offense was a major economic offense for the additional reasons that "[t]he defendant was the office manager/bookkeeper for the business and did enjoy a position of trust, which she used in order to take the money and to evade detection over a course of years", "[t]he state has alleged an amount in excess of $500,000", and "[t]he crime occurred over a course of over two years." CP at 94-95.

Ms. Sandvig also argues that the exceptional sentence is clearly excessive. Pointing to exceptional sentences imposed in several reported cases in which the prosecution charged only one count for multiple thefts, she makes the novel argument that it is only where the prosecutor has conservatively charged a single count that the

9

court reasonably adjusts the sentence for the crime's severity by imposing an exceptional sentence. Because the State charged 30 counts in this case, she argues, an exceptional sentence was excessive.

Ms. Sandvig's argument is not persuasive. The presumptive range for an individual convicted of first degree theft with an offender score of nine is 43-57 months, and Ms. Sandvig stipulated to the existence of facts supporting the aggravating factors. While she may have been charged with 30 counts, she committed even more separate thefts, and most of the 30 incidents charged were going unpunished because of Ms. Sandvig's high offender score. The court did not abuse its discretion.

### *Monthly restitution payments*

Ms. Sandvig argues that the trial court abused its discretion in ordering her to make minimum monthly payments of $100 in restitution upon her release from incarceration. A court is required to order restitution "whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property." RCW 9.94A.753(5).

> The court shall then set a minimum monthly payment that the offender is required to make towards the restitution that is ordered. The court should take into consideration the total amount of the restitution owed, the offender's present, past, and future ability to pay, as well as any assets that the offender may have.

RCW 9.94A.753(1). We review a trial court's award of restitution for abuse of discretion. *State v. Davison*, 116 Wn.2d 917, 919, 809 P.2d 1374 (1991).

10

The court properly inquired into Ms. Sandvig's ability to pay: "I'm just assuming that after your release from confinement you will be able to work. There's nothing preventing you, except for this (inaudible). Is that accurate?" RP at 73. Further, Ms. Sandvig indicated several times that she hoped to make amends. A minimum monthly payment of $100 is not untenable. The court did not abuse its discretion.

### LFOs

For the first time on appeal, Ms. Sandvig challenges the trial court's finding that she has the present or likely future ability to pay discretionary LFOs.

As a preliminary matter, we consider whether to accept review of Ms. Sandvig's contention that the trial court failed to comply with RCW 10.01.160(3), when Ms. Sandvig made no objection to the finding that she was able to pay the costs imposed at the time of sentencing and thereby failed to preserve a claim of error. RAP 2.5(a); *State v. Blazina*, 182 Wn.2d 827, 833, 344 P.3d 680 (2015) ("[u]npreserved LFO errors do not command review as a matter of right"). "[A] defendant has the obligation to properly preserve a claim of error" and "appellate courts normally decline to review issues raised for the first time on appeal." *Id.* at 830, 834. The rationale for refusing to review an issue raised for the first time on appeal is well settled: issue preservation helps promote judicial economy by ensuring "that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals." *State v. Robinson*, 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011) (citing *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)).

11

Ms. Sandvig unquestionably waived her right to appeal the trial court's finding and imposition of discretionary LFOs. In fact, she acknowledged that she wished to make amends for her crime. Despite her waiver, we enjoy discretion to make an exception to the general requirement of issue preservation. In this case, because the sentencing court commented on the unlikelihood of Ms. Sandvig's ability to pay, we exercise our discretion to review the issue.

RCW 10.01.160(3) provides in part, that a court "shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant." In order to comply with the statute, an individualized inquiry must be made on the record. *Blazina*, 182 Wn.2d at 838. Among the important factors the court must consider are "a defendant's other debts, including restitution." *Id.* A trial court's finding that a defendant has the "'resources and ability to pay is essentially factual and should be reviewed under the clearly erroneous standard.'" *State v. Bertrand*, 165 Wn. App. 393, 404 n.13, 267 P.3d 511 (2011) (quoting *State v. Baldwin*, 63 Wn. App. 303, 312, 818 P.2d 1116, 837 P.2d 646 (1991)).

Here, the court raised the issue of Ms. Sandvig's ability to pay and observed that she would likely never be able to repay the restitution that she owes. Following *Blazina*'s directive that restitution and other debts be considered, it was clearly erroneous for the trial court to impose discretionary costs.

12

No. 32599-1-III
*State v. Sandvig*

In its brief, the State asked that this court, in the interest of judicial economy and efficiency, strike the $250 in discretionary costs rather than remand for resentencing. We accept the suggestion and remand for the limited purpose of striking the $250 in discretionary LFOs imposed by the court.

We affirm the adjudication and remand for the sole purpose of striking the $250 in discretionary LFOs.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, J.

_____
Sypolt, J.P.T.

13