# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57922-7-II |
| Respondent, | |
| v. | |
| ANTHONY LAWRENCE LEE, | PUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Anthony Lee beat Amy Groff in the head with a gun while they were inside his truck. When she got out of the truck, he shot at her. The State charged Lee with one count of second degree assault by recklessly inflicting substantial bodily harm and one count of second degree assault with a deadly weapon. Three days before Lee's jury trial, the trial court allowed the State to amend the first count of second degree assault by adding the alternative means of assault with a deadly weapon. Lee was not arraigned on the amended information, and the State did not file it until about a year later.

At trial, defense counsel objected to a police officer's testimony about what Groff said. In the jury's presence, the trial court admitted the testimony and said that the statements were reliable for purposes of the excited utterance hearsay exception.

The jury convicted Lee of both counts of assault. On appeal, Lee argues for the first time that the trial court commented on the evidence. Lee also argues that the alternative means of committing second degree assault was uncharged because the amended information was not filed,

that the trial court erroneously instructed the jury on the uncharged alternative means, and that he received ineffective assistance of counsel when his attorney proposed an instruction that included the alternative means. Lee asserts that his two second degree assault convictions violate double jeopardy. Finally, Lee argues that the $500 crime victim penalty assessment must be stricken from his judgment and sentence.

With regard to Lee's argument that the trial court commented on the evidence, Lee has not raised a manifest error affecting a constitutional right. We hold that the trial court and parties tried the case with the understanding that the amended information was effective, which Lee affirmatively acknowledged, so the court properly instructed the jury, and Lee's counsel was not ineffective. And we hold that Lee's two second degree assault convictions do not violate double jeopardy.

We affirm Lee's convictions. We remand to the trial court to strike the $500 crime victim penalty assessment, and we otherwise affirm Lee's sentence.

FACTS

I. BACKGROUND

In October 2022, Lee lived on a rural property next to state highway 101. Groff, Lee's friend, moved back to the area that month. One night, Groff asked Lee for a ride after gambling at a casino. Lee joined Groff at the casino for an hour before driving her to his home, where Groff stayed with Lee and his wife.[1]

---

[1] Although there are instances in the record where the person Lee lived with is referred to as Lee's girlfriend, Lee referred to her as his wife. We adopt Lee's characterization of their relationship.

The next evening, Lee and Groff went to an apartment belonging to a friend of Groff's. Afterward, they returned to the casino. Lee eventually left the casino, while Groff remained and continued to gamble. When Lee returned, Groff "got mad at him for . . . taking off because he had all [her] stuff in the truck." Verbatim Rep. of Proc. (VRP) at 475. In response, Lee started speeding and swerving the truck while Groff was in the passenger seat.

Once Lee and Groff reached Lee's home, Lee yelled at Groff to get out of his truck. Lee pulled out a gun, fired it in the air, came over the truck's center console, and hit Groff in the head with the gun several times. Lee then pushed Groff out of the truck, kicked and hit Groff in the head, and shot at her. Groff "got up and ran," and Lee shot at her more as she ran away. VRP at 483. After neighbors called the police, a law enforcement officer found Groff walking along highway 101.

The following morning, a detective interviewed Lee. The interview was videotaped. Lee told the detective that during his second day with Groff, she took him to a "trap house" and smoked heroin next to him. Ex. 78, at 4 min., 36 sec. to 4 min., 52 sec. (on file with court). He said he "got pissed off" and wanted to leave, but he drove her to the casino "to be nice." *Id.* at 4 min., 50 sec. to 4 min., 56 sec. At the casino, she insulted him "the whole time." *Id.* at 10 min., 50 sec. to 11 min., 4 sec. Later, when they returned to Lee's residence, he said Groff took his wallet. He also referred to her verbally abusing him. And he was angry because she refused to leave his truck. Lee told the detective, "I wanted her out of my vehicle; I wanted her out of my life." *Id.* at 14 min., 22 sec. to 14 min., 26 sec. But Lee denied assaulting Groff.

The State charged Lee with two counts of second degree assault, each with a firearm enhancement.[2] In the first count, the State alleged that Lee committed assault by recklessly inflicting substantial bodily harm when he beat up Groff inside the truck. In the second count, the State alleged that Lee committed assault with a deadly weapon, a firearm, when he shot at her as she tried to escape.

## II. TRIAL

### A.    Alternative Means

In January 2023, the Friday before Lee's jury trial was to begin on the following Monday, the State moved to amend the information. The State sought to add the alternative means of assault with a deadly weapon to the first count of second degree assault based on the allegation that Lee hit Groff in the head with the gun while inside the truck.

Lee's counsel objected to the amendment, arguing that while "it [didn't] change the underlying facts," he would have little time to reevaluate his trial strategy. VRP at 85. The trial court allowed the amendment and said, "If you think about it over the weekend, if there's some huge prejudice . . . I guess the Court can readdress that . . . but I'm not seeing what the prejudice is at this point. And so I'm going to sign it." *Id.* The State did not present a written amended information to the court to sign, nor did it file an amended information before trial.

On the first day of trial, Lee did not renew his objection to the amendment or ask for a continuance. Lee proposed a jury instruction stating that to convict him of the first count of second degree assault, the jury had to find that he "recklessly inflicted substantial bodily harm" or "assaulted [Groff] with a deadly weapon." Clerk's Papers (CP) at 69.

---

[2] The State also charged Lee with first degree unlawful firearm possession. This charge is not at issue on appeal.

4

The amended information was not filed until January 2024, about a year after the trial ended. In its order to file the amended information, the trial court explained that in January 2023, it had ruled that "the amended information could be filed," but because of an "oversight," the order "for filing of the amended information" had not been signed. CP at 184. The trial court thus signed an order "for amending the information to correct the clerical oversight nunc pro tunc." *Id.* Minutes from the hearing show that there was no objection to the 2024 order or to the characterization of the error as clerical.

B.      Officer's Testimony

At the beginning of trial, the trial court instructed the jury that one of the court's duties was ruling on the admissibility of evidence and that the jury should not be concerned with the reasons for its rulings. The trial court also instructed jurors that if it appeared to give a personal opinion about any evidence, jurors had to "disregard this entirely." VRP at 281.

The officer who found Groff on the highway testified at trial. When he began testifying about what Groff said to him, defense counsel objected, arguing that the testimony was hearsay. The trial court did not excuse the jury. The State responded that the testimony met the excited utterance exception to the rule against hearsay, stating that Groff was "visibly sobbing" when the officer found her and arguing that "still being under the stress of the event is a key component of . . . the analysis of whether . . . [there is] . . . that reliability . . . that makes it a hearsay exception." VRP at 417-18. In the jury's presence, the trial court admitted the testimony and said, "I do believe that the circumstances as described here are close enough in proximity and time to the . . . circumstances alleged to have occurred as to constitute . . . reliable statements for purposes of hearsay exceptions." VRP at 418.

5

Before closing, the trial court repeated its instructions to jurors about its rulings on admissibility of evidence and jurors' duty to disregard entirely any appearance that the trial court gave a personal opinion about the evidence.

In addition, the video of Lee's interview with law enforcement was played for the jury.

C.      Groff's Testimony

Groff's testimony was consistent with the facts described above. She admitted to having used methamphetamine that evening, and medical records showed that there were opiates in her system immediately after the incident. Groff said that after she and Lee left the casino, Lee was driving erratically because he was angry with her. When they arrived at the house, Lee yelled at her to get out of the truck. Groff testified that she "was trying to get [her] stuff together," but she "wasn't moving fast enough," so Lee "pulled out his gun and fired it off in the air," jumped over the console, and started beating her in the head with the gun. VRP at 475.

Lee then pushed Groff out of the truck. Groff started crawling to get away from him and he kicked and hit her in the head while she was on the ground. She had to curl up into the fetal position to protect herself. When she tried to get up to move away from Lee, he started firing the gun at her. She could hear bullets going past her and hitting the ground. She then heard Lee's wife come outside and yell. Groff was able to get up and run away. Lee shot at her more while she was running down the driveway. She managed to get into a ditch and hide. She eventually went to the highway to try to find someone. Groff had several injuries, including an eye that was swollen shut, multiple large lumps on her head, and teeth that had been kicked out.

D.     To-Convict Jury Instruction, Closing, and Verdict

As both parties requested, the trial court instructed the jury that to convict Lee of the first count of assault, it had to find that Lee either "intentionally assaulted [Groff] and thereby recklessly inflicted substantial bodily harm" or "assaulted [Groff] with a deadly weapon." CP at 52. The trial court also instructed the jury that it did not need to be "unanimous as to which of the alternatives . . . [had] been proved beyond a reasonable doubt." *Id.*

During the State's closing, the prosecutor listed the acts forming the basis of each assault charge. He explained that the first count was based on the "beating that Mr. Lee gave Ms. Groff with the gun to her head in the truck," and the second count was based on Lee deciding to "scare [Groff] off his property by shooting a firearm." VRP at 661,663.

The jury found Lee guilty of both the first and second counts of assault with firearm enhancements for each count. The trial court sentenced Lee to 120 months of confinement.

Lee appeals his judgment and sentence.

## ANALYSIS

### I. JUDICIAL COMMENT ON THE EVIDENCE

Lee argues for the first time on appeal that the trial court impermissibly commented on the evidence when it said, in front of the jury, that Groff's statements to the officer were "'reliable . . . for purposes of hearsay exceptions.'" Br. of Appellant at 20 (quoting record). Lee asserts that the trial court's comment violated the Washington Constitution. We decline to review Lee's claim.

An "appellate court may refuse to review any claim of error [that] was not raised in the trial court." RAP 2.5(a). But a party may raise a "manifest error affecting a constitutional right" for the first time on appeal. RAP 2.5(a)(3). The party "must demonstrate (1) the error is manifest

and (2) the error is truly of constitutional dimension." *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).

Lee's claim of error is constitutional, as article IV, section 16 of the Washington Constitution forbids trial courts from commenting on evidence. *State v. Swan*, 114 Wn.2d 613, 657, 790 P.2d 610 (1990); *State v. Levy*, 156 Wn.2d 709, 719-20, 132 P.3d 1076 (2006). But to show that he is "entitled to review of this claim under RAP 2.5(a)(3)," Lee must also show that the error is manifest. *State v. Gouley*, 19 Wn. App. 2d 185, 198, 494 P.3d 458 (2021). In other words, he must show "'actual prejudice,' which requires a 'plausible showing . . . that the asserted error had practical and identifiable consequences in the trial of the case.'" *Id.* at 197-98 (internal quotation marks omitted) (quoting *O'Hara*, 167 Wn.2d at 99).

Here, there is no manifest error because the statement Lee challenges was not a comment on the evidence. An impermissible comment on the evidence is one that "conveys to the jury a judge's personal attitudes toward the merits of the case or allows the jury to infer from what the judge said or did not say that the judge personally believed the testimony in question." *Swan*, 114 Wn.2d at 657. We consider whether the trial court's comments communicated to the jury the judge's feeling as to the truthfulness of a witness's testimony. *State v. Lane*, 125 Wn.2d 825, 838, 889 P.2d 929 (1995).

For example, in *State v. Lampshire*, a case that turned on witness credibility, the trial court made the following comment in front of the jury after the prosecutor objected to a line of questioning in defense counsel's direct examination of the defendant: "'Counsel's objection is well taken. We have been from bowel obstruction to sister Betsy, and I don't see the materiality, counsel.'" 74 Wn.2d 888, 891, 447 P.2d 727 (1968) (plurality opinion signed by four justices; one

justice concurred in the result only and four dissented) (quoting record). The lead opinion concluded that this statement was a prejudicial comment on the evidence because it "implicitly conveyed to the jury [the judge's] personal opinion concerning the worth of the defendant's testimony" and the error "was not capable of being cured by a subsequent instruction to disregard" any comments by the court. *Id.* at 892.

In contrast, in *State v. Cerny*, the trial court overruled the defendant's objection to circumstantial evidence and said, "'The burden is on the [State] to tie this together.'" 78 Wn.2d 845, 855, 480 P.2d 199 (1971), *vacated in part on other grounds*, 408 U.S. 939 (1972) (quoting record). "Later, in response to [the defendant's] further objections, the trial [court] stated: 'I think the chain of evidence has been established.'" *Id.* (quoting record) The Washington Supreme Court held that these statements were not comments on the evidence, reasoning that when a trial court rules on objections to testimony, it has the right to give reasons for its rulings. *Id.* at 855-56. The Supreme Court further reasoned that the jury was instructed not to interpret anything the trial court said while ruling on objections as the judge's opinion. *Id.* at 856. And courts presume juries follow their instructions. *Id.*

Here, the trial court's statement in the jury's presence did not amount to a comment on the evidence. This case is more like *Cerny* than *Lampshire*. Like the trial court in *Cerny*, when the trial court in this case made the challenged statement, it was giving a reason for its ruling on the defendant's hearsay objection to the officer's testimony: "I do believe that the circumstances as described here are close enough in proximity and time to the . . . circumstances alleged to have occurred as to constitute . . . reliable statements *for purposes of hearsay exceptions*. So I'm going to allow the statements." VRP at 418 (emphasis added). Unlike in *Lampshire*, where the trial court

made the challenged statement while the defendant was testifying and did not frame it as a legal determination based on the rules of evidence, the trial court in this case explicitly said it was making an evidentiary ruling.

Moreover, the trial court instructed jurors, both at the beginning of trial and just before closing arguments, that one of its duties was to rule on the admissibility of evidence and that they should not concern themselves with the reasons for those rulings. The trial court also instructed jurors that if it appeared to give a "personal opinion in any way," jurors had to "disregard this entirely." VRP at 643. We generally presume jurors follow their instructions. *Cerny*, 78 Wn.2d at 856. It is appropriate to apply that presumption in this case, given the trial court's wording when it ruled on the objection, and given the instructions specifically telling jurors not to interpret evidentiary rulings as the judge's personal opinions.

While it might have been more prudent to rule on the admissibility of Groff's statements outside the presence of the jury if the trial court was going to mention reliability, Lee has not shown that any alleged error resulting from the trial court's comment was manifest, as RAP 2.5(a)(3) requires. He is therefore not entitled to review of his claim for the first time on appeal.

## II. ALTERNATIVE MEANS

Lee argues that we must reverse the second degree assault conviction based on the first count. He contends that while the original information listed the first count as assault by reckless infliction of substantial bodily harm, the amendment adding the alternative means of assault with a deadly weapon was ineffective, and the trial court's instructions enabled the jury to consider this uncharged alternative means. Lee acknowledges that the trial court "granted the prosecution's motion to amend the information on the eve of trial" but he adds that the State did not file the

10

amended information until after Lee filed his opening brief with this court, and the trial court did not arraign Lee on the amended information. Br. of Appellant at 25-26. Lee further argues that "to the extent defense counsel invited the error," defense counsel "was constitutionally ineffective." Br. of Appellant at 25. We disagree.

A.      Amendment to the Information

We first address Lee's contention that because the State did not file the amended information until after trial, he was not properly charged before trial with committing the first count of second degree assault with a deadly weapon, so the jury's instructions allowed a conviction on an uncharged alternative means.

"Failing to properly notify a defendant of . . . a criminal charge" violates the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution. *In re Pers. Restraint of Brockie*, 178 Wn.2d 532, 536, 309 P.3d 498 (2013). A trial court therefore errs when it instructs the jury on an uncharged alternative means of committing a crime. *Id.* But when an information is amended, failure to file it does not necessarily nullify the amended charge if the record makes it clear that the defendant understood the charge. *See State v. Eaton*, 164 Wn.2d 461, 466, 191 P.3d 1270 (2008) (quoting *State v. Barnes*, 146 Wn.2d 74, 88, 43 P.3d 490 (2002)).

For example, in *Eaton*, the State charged the defendant with amphetamine possession. 164 Wn.2d at 464. On the first day of trial, the trial court allowed the State to amend the charge to cocaine possession and arraigned the defendant on the amended information. *Id.* Although the prosecutor gave the trial judge the amended information, it did not appear in the appellate record. *Id.* After the jury deadlocked, the State retried the defendant, and the trial court mistakenly

arraigned Eaton on the original information charging amphetamine possession. *Id.* at 465. Just before trial, defense counsel raised the mistake and "expressed concern that the defendant may have been misled about the crime he was charged with committing." *Id.* The trial judge clarified that the defendant was charged with cocaine possession as provided in the amended information and offered the defendant a continuance. *Id.* The defendant chose to go to trial and was convicted of cocaine possession. *Id.*

On appeal, the defendant "asserted that he was convicted of a crime with which he was not charged," but the Washington Supreme Court held that the amended information was effective, reasoning that even though it was not in the court file, the trial court granted the motion to amend, "the defendant was arraigned on the amended charge, and the trial court used the amended information in presenting the case to the jury." *Id.* at 463-64, 466. The court further held that while the faulty rearraignment "could have caused confusion," the defendant received "constitutionally adequate notice of the crime with which he was charged," as the trial court clarified that he was charged with cocaine possession and offered a continuance. *Id.* at 466-67.

Although *State v. Oestreich* concerns a jurisdictional challenge, its reasoning is similar. 83 Wn. App. 648, 922 P.2d 1369 (1996). In *Oestreich*, the State initially charged the defendant with attempted first degree robbery and first degree burglary. *Id.* at 650. The State then filed an amended information containing only the attempted robbery charge so the defendant could plead guilty to that crime. *Id.* But the defendant later withdrew his plea, and the State did not move to withdraw the amended information, move to reinstate the original information, nor "file a second amended information re-alleging the original two counts." *Id.* Then the defendant pleaded guilty to both attempted robbery and burglary. *Id.* He later appealed his conviction for burglary, arguing that "the

trial court lost jurisdiction to adjudicate the burglary count" after the State filed an amended information charging attempted robbery only. *Id.* at 651. We held that the trial court did not err, reasoning that "both parties acted in all respects as if the amended information had been withdrawn and the original information reinstated," and "the trial court was entitled to do likewise." *Id.* at 651-52.

Here, Lee proposed a to-convict instruction that contained the alternative means he claims was uncharged. The invited error doctrine precludes our review in these circumstances. *State v. Doogan*, 82 Wn. App. 185, 188, 917 P.2d 155 (1996) (holding that although it is "reversible error to try a defendant under an uncharged statutory alternative," the invited error doctrine applies where the defendant proposed the jury instruction allowing the jury to convict on the uncharged means of committing the crime).

As noted above, Lee argues that if defense counsel invited the error, counsel was constitutionally ineffective, warranting reversal. "Invited error is not a bar to review of a claim of ineffective assistance of counsel." *Id.* (holding that to prevail on an ineffective assistance claim, a defendant must show deficient performance and actual prejudice). But Lee's ineffective assistance of counsel claim also fails. Defense counsel did not perform deficiently by proposing a to-convict instruction with an alternative means of committing the first count because that alternative means was not uncharged.

As in *Eaton*, the trial court in this case granted the State's motion to amend the information and the State presented the case to the jury consistent with the amended information. Most significantly, "both parties acted in all respects as if the amended information" controlled. *Oestreich*, 83 Wn. App. at 651-52. Lee's counsel objected to the amendment, but after the trial

court granted the motion to amend the information, Lee expressed no surprise or concern about the way the case was presented in opening arguments, presentation of witness testimony, instructions, or closing. And the trial court ultimately filed the amended information "nunc pro tunc," making it effective from the date it authorized the amended information. CP at 184; *see also* BLACK'S LAW DICTIONARY 1283 (12th ed. 2024) (defining "nunc pro tunc" as "[h]aving retroactive legal effect through a court's inherent power"). The record shows that the parties were in agreement about correcting what the trial court characterized as a clerical error.

While it is troubling that the State did not file the amended information until roughly a year after Lee's trial, and that the trial court did not arraign Lee on the alternative means of assault with a deadly weapon, under the circumstances of this case, the amended information was effective. Pretrial, the trial court and the parties proceeded with the understanding that the amended information was operative. During trial, Lee affirmatively acknowledged being tried on the amended information. Postverdict, the parties agreed that the amended information should be filed nunc pro tunc. Therefore, Lee was not convicted of an uncharged alternative means.

We acknowledge that unlike in *Eaton*, there was no arraignment after the amendment. We next address whether the trial court's failure to arraign Lee on the amended information alters our analysis.

B.      Arraignment

Amending an information without rearraignment is permissible if "'the amendment is one of form, not substance'" or if "'substantial rights of the defendant are not prejudiced.'" *State v. O.P.*, 103 Wn. App. 889, 893, 13 P.3d 1111 (2000) (quoting *State v. Allyn*, 40 Wn. App. 27, 35,

14

696 P.2d 45 (1985)). The defendant has the burden of demonstrating prejudice. *State v. Royster*, 43 Wn. App. 613, 619-20, 719 P.2d 149 (1986).

When the State adds an alternative means, as the State did here, the amendment is one of substance because "[t]he manner of committing a crime is an element and the defendant must be informed of this element . . . in order to prepare a proper defense." *State v. Bray*, 52 Wn. App. 30, 34, 756 P.2d 1332 (1988). Such an amendment does not prejudice the defendant's substantial rights if the defendant had actual notice of the amendment and the facts supporting it. *See State v. Anderson*, 12 Wn. App. 171, 173, 528 P.2d 1003 (1974); *Royster*, 43 Wn. App. at 620. A defendant's decision to go to trial without objecting or requesting a continuance shows a lack of prejudice. *See Anderson*, 12 Wn. App. at 173; *Royster*, 43 Wn. App. at 620.

For example, in *O.P.*, the trial court did not arraign the defendant after the State added a domestic violence designation to his fourth degree assault charge. 103 Wn. App. at 891, 893. Division One held that there was no prejudice in part because "the original charge made clear that [the defendant] was accused of assaulting his mother." *Id.* at 893. And in *Royster*, the trial court did not arraign the defendant after permitting the addition of a second degree theft charge on the first day of trial. 43 Wn. App. at 616, 619. Division One held that the defendant "suffered no prejudice," reasoning that defense counsel knew a week before trial that the State would add the charge, that the State filed the proposed amended information two days before trial, that the defendant "never requested a continuance," and that the defendant "had notice of the facts supporting the theft from the outset of the matter." *Id.* at 619-20.

Similarly, in *Anderson*, there was no arraignment after the State added two counts of second degree burglary. 12 Wn. App. at 172. Division One found no prejudice because both the

defendant and defense counsel had actual notice of the burglary charges before trial and the defendant "proceeded to trial without objection and without asking for a continuance after announcing he was ready to proceed to trial." *Id.* at 173.

Here, the failure to arraign Lee on the amended information did not prejudice his substantial rights. Much like in *Royster*, the State proposed the amendment three days before trial. Unlike in *Royster*, the record indicates that the State did not give Lee earlier notice. However, noting that the amendment implicated "no new fact," the trial court offered to readdress the amendment on the first day of trial if Lee could demonstrate prejudice, and Lee neither renewed his objection nor asked for a continuance. VRP at 85, 94. As the trial court pointed out, Lee knew about the facts supporting the alternative means "from the outset of the matter" because each alternative was based on the exact same act, hitting Groff with a gun. *Royster,* 43 Wn. App. at 619-20. And unlike in *Royster* and *Anderson*, the State did not add entirely new charges. The absence of a second arraignment does not alter our conclusion that no error occurred when the jury instruction on the first count of second degree assault included the alternative means added in the amended information.

In sum, despite the lack of filing and no arraignment, the amended information was effective. Therefore, defense counsel did not perform deficiently by proceeding to trial on the amended information and proposing jury instructions consistent with it.

### III. DOUBLE JEOPARDY

Lee argues that his two second degree assault convictions "constitute a single course of conduct and therefore violate double jeopardy." Br. of Appellant at 33. The State responds that there is no double jeopardy violation because "each crime had a different purpose." Br. of Resp't

at 36. (boldface and capitalization omitted). In "the first assault, Lee intended to inflict physical harm" when he hit Groff with the gun, whereas in "the second assault, Lee intended to scare Groff to the point where she would leave the property." Br. of Resp't at 42. The State also argues that the assaults took place in different locations because the first assault took place in Lee's truck, whereas the second assault took place outside the truck. And the State argues that Lee's wife came outside when the shooting started, "interrupting the assault . . . and giving Lee an opportunity to reconsider his actions." *Id.* The State contends that "Lee did reconsider because his motivation or intention changed from the first assault to the second." *Id.*

We agree with the State that the beating inside the truck and the shooting as Groff was trying to escape were two assaults with different purposes and in different manners, rather than a single continuing course of conduct.

The United States Constitution and the Washington Constitution provide defendants coextensive protections from double jeopardy. U.S. CONST. amend. V; WASH. CONST. art. I, § 9; *State v. Reeder*, 184 Wn.2d 805, 825, 365 P.3d 1243 (2015). In part, they protect a defendant from "multiple punishments for the same offense, imposed at a single criminal proceeding." *State v. Potter*, 31 Wn. App. 883, 886, 645 P.2d 60 (1982). "We review double jeopardy claims de novo." *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 979-80, 329 P.3d 78 (2014).

When a defendant is charged with multiple violations of the same statute, double jeopardy principles protect them from "'being convicted twice under the same statute for committing just one unit of the crime.'" *State v. Bobic*, 140 Wn.2d 250, 261, 996 P.2d 610 (2000) (quoting *State v. Adel*, 136 Wn.2d 629, 634, 965 P.2d 1072 (1998)). Therefore, we must determine "'what act or

course of conduct'" the legislature has "'defined as the punishable act.'" *Villanueva-Gonzalez*, 180 Wn.2d at 980 (quoting *Adel*, 136 Wn.2d at 634).

Assault is a course of conduct crime, so multiple assault convictions based on a single course of conduct violate double jeopardy. *Id.* at 982, 985 (explaining that this conclusion lessens the risk of a defendant being convicted for every punch they throw in a fistfight). "To determine if multiple assaultive acts are part of the same course of conduct," we look at five factors: the "'length of time over which the assaultive acts took place,'" whether "'the assaultive acts took place in the same location,'" the defendant's intent when they committed the different assaultive acts, whether "'any intervening acts or events'" took place, and whether the defendant had an opportunity to reconsider their actions. *In re Pers. Restraint of White*, 1 Wn. App. 2d 788, 793, 407 P.3d 1173 (2017) (quoting *Villanueva-Gonzalez*, 180 Wn.2d at 985). No "one factor is dispositive, and the ultimate determination" depends "on the totality of the circumstances, not a mechanical balancing of the various factors." *Villanueva-Gonzalez*, 180 Wn.2d at 985.

For example, in *Villanueva-Gonzalez*, the defendant was convicted of second degree assault for headbutting his girlfriend and fourth degree assault for holding her down by the neck, all in one incident. 180 Wn.2d at 978-79. The Washington Supreme Court held that the convictions violated double jeopardy because the defendant's actions "constituted one course of conduct." *Id.* at 985. Both actions "took place in the same location . . . over a short time period," there was "no indication in the record of any interruptions or intervening events," and there was no evidence suggesting that the defendant "had a different intention or motivation for these actions or that he had an opportunity to reconsider his actions." *Id.* at 986.

Similarly, in *White*, the defendant's girlfriend told him she would go to court if they could not reach a child custody agreement, and the defendant pointed a gun at her and threatened to kill her. 1 Wn. App. 2d at 790. The girlfriend pushed their child off her lap and stood up. *Id.* The defendant then "threw her face down on the floor[] and began hitting her." *Id.* When she tried to get up, the defendant strangled her. *Id.* Throughout the incident, the child screamed for the defendant to stop. *Id.*

The defendant was convicted of one count of second degree assault for pointing the gun at his girlfriend and one count of second degree assault for strangling her. *Id.* Division One held that the defendant's two convictions violated double jeopardy because the "*Villanueva-Gonzalez* factors and the totality of the circumstances indicate[d] that the acts were part of a singular course of conduct." *Id.* at 798. The court reasoned that the defendant's acts "occurred in the same place, within a short period of time, in an uninterrupted series," and "with the stated intent of killing" his girlfriend. *Id.* at 797. The court explained that the record showed "one continuous struggle from the time [the defendant] pointed a gun at [his girlfriend] to throwing her on the floor and beating her to the time he began to strangle her." *Id.* at 796.

Like the State in this case, the State in *White* argued that the defendant's intent changed during the incident because he intended to create apprehension when he pointed a gun at his girlfriend, whereas he intended to inflict immediate physical harm when he strangled her. *Id.* at 794. The court rejected this argument, reasoning that overall, the defendant "intended to assault" his girlfriend and the entire episode "was motivated by the disagreement over where [the child] would live." *Id.* at 795. The court also rejected the State's argument that the defendant's awareness of the child screaming for him to stop gave him the opportunity to think about the ramifications of

his actions, explaining that "[r]egardless of the words [the child] screamed during the assaultive acts," there was "no interruption or moment of calm that provided an opportunity to reconsider." *Id.* at 796.

Here, we acknowledge that some of the *Villanueva-Gonzalez* factors weigh in favor of holding that Lee's assaultive acts constituted one course of conduct. Groff's testimony established that the assaultive acts took place over a short period of time in Lee's driveway. There were no intervening acts or events. Though the State argues that Lee's wife interrupted the assault by stepping out of her home, this event did not occur between the beating, the act forming the basis for the first count, and the shooting, the act forming the basis for the second count. Instead, Lee's wife stepped out after Lee had already begun shooting at Groff. And testimony about this moment does not support the State's contention that it diverted Lee's attention and created a "moment of calm" that gave Lee "an opportunity to reconsider." *White*, 1 Wn. App. at 796. There is no indication that Lee paused when his wife yelled at him.

Yet a defendant's intent or motivation bears significantly on the question of whether multiple assaultive acts constituted one course of conduct. Lee argues that his overarching motivation was getting Groff to leave the property where he lived. While this explanation is consistent with Lee's decision to scare Groff by shooting at her, it is inconsistent with his decision to beat her *before* chasing her off of the property with gunfire. Lee did not hasten Groff's departure by severely beating her in the head with the gun inside the truck and kicking and hitting her on the ground. The more logical explanation is that the beating was motivated by Lee's anger toward Groff for things she had done that evening: insulting him, smoking heroin near him, and trying to steal his wallet.

Although *White* has some factual similarities with this case, it is distinguishable. In *White*, the defendant first threatened his girlfriend with a gun. 1 Wn. App. 2d at 790. It was only after his girlfriend stood up that the defendant began to hit and strangle her. *Id.* The defendant's actions escalated from threats to physical violence, all "motivated by the disagreement over where [their child] would live." *Id.* at 795.

In contrast, Lee inflicted physical violence and *then* scared Groff off the property by shooting at her. Here, a threat did not escalate into violence. Instead, Lee significantly injured Groff before he chased her off the property by threatening her with gunfire. And he admitted in his interview with law enforcement that he was angry at Groff for insulting him, smoking heroin, and trying to steal his wallet. Considering all of the circumstances, it is far more likely that Lee's anger at Groff for these things motivated the beating, and his desire to then get her to leave motivated the shooting. Unlike *White,* which involved a single ongoing physical altercation, Lee fired shots at Groff *after* the physical struggle ended and Groff was moving away from him in an attempt to escape; there was evidence that at least one gunshot happened after the physical struggle ended. This is not a case where the trial court imposed multiple punishments for each punch thrown in a fight. Both the motivation and the manner of the assault changed over the course of the incident.

In light of the totality of the circumstances, Lee's assaultive acts were not part of a singular course of conduct. His two second degree assault convictions do not violate double jeopardy.

IV. CRIME VICTIM PENALTY ASSESSMENT

Lee argues, and the State concedes, that the crime victim penalty assessment must be stricken from his judgment and sentence because he is indigent. Trial courts may no longer impose

21

No. 57922-7-II

the crime victim penalty assessment on indigent defendants. Former RCW 7.68.035 (2018), *amended by* LAWS OF 2023, ch. 449, § 1(4). The new statute applies in all cases that were not yet final when the statute was adopted. *State v. Azevedo*, No. 57910-3-II, slip op. at 14 (Wash. Ct. App. Apr. 30, 2024).[3] We accept the State's concession and remand for the trial court to strike the crime victim penalty assessment from Lee's judgment and sentence.

## CONCLUSION

We affirm Lee's convictions, but we remand to the trial court to strike the $500 crime victim penalty assessment. We otherwise affirm his sentence.

GLASGOW, J.

I concur:

CRUSER, C.J.

---

[3] https://www.courts.wa.gov/opinions/pdf/D2%2057910-3-II%20Published%20Opinion.pdf

22

CHE, J. (dissenting) — I respectfully dissent on the issue of double jeopardy. While the majority considers all required factors, it makes one factor dispositive when the four remaining factors weigh in the opposite direction. Majority Opinion at 20-21. I come to a different conclusion after considering the facts and weighing the same factors. I would conclude that Lee's two second degree assault convictions constituted a single course of conduct and therefore violate double jeopardy regardless of whether his intent or motivation changed given the specific facts of this case. Otherwise, I concur with the results reached on the remaining issues in the majority opinion.

The double jeopardy clause in both the Fifth Amendment to the United States Constitution and article I, section 9 of the Washington State Constitution, provide three protections: (1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second prosecution for the same offense after conviction, and (3) protection against multiple punishments for the same offense. *State v. Reeder*, 184 Wn.2d 805, 825, 365 P.3d 1243 (2015).

Which double jeopardy analysis to apply depends on whether the convictions at issue involve the same statutory provision or different statutory provisions. *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 980, 329 P.3d 78 (2014). In cases involving convictions under different statutes, the *Blockburger*[4] analysis applies and it asks, "whether the convictions were 'the same in law and in fact.'" *Villanueva-Gonzalez*, 180 Wn.2d. at 981 (quoting *State v. Adel*, 136 Wn.2d 629, 632, 965 P.2d 1072 (1998)). In cases involving multiple violations of the same

---

[4] *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

statute, the unit of prosecution analysis applies and it asks, "'what act or course of conduct has the Legislature defined as the punishable act.'" *Id.* at 980 (quoting *Adel*, 136 Wn.2d at 634).

Assault should be treated as a course of conduct crime, which also helps to avoid the risk of a defendant being "'convicted for every punch thrown in a fistfight.'" *Id.* at 984-85 (quoting *State v. Tili*, 139 Wn.2d 107, 116, 985 P.2d 364 (1999)).

Courts look at five factors to determine if multiple assaultive acts are part of one course of conduct for double jeopardy purposes: (1) "[t]he length of time over which the assaultive acts took place," (2) "[w]hether the assaultive acts took place in the same location," (3) "[t]he defendant's intent or motivation for the different assaultive acts," (4) "[w]hether the acts were uninterrupted or whether there were any intervening acts or events," and (5) "[w]hether there was an opportunity for the defendant to reconsider his or her actions." *Id.* at 985. No bright-line rule exists for when multiple assaultive acts constitute one course of conduct. *Id.* "[N]o one factor is dispositive, and the ultimate determination should depend on the totality of the circumstances, not a mechanical balancing of the various factors." *Id.*

The majority opinion resolves four factors in Lee's favor—Groff established that the assaultive acts occurred over a short period of time in Lee's driveway, there were no intervening acts or events, and there was no opportunity for Lee to reconsider his actions. Majority Opinion at 20. It further concludes that Lee's intent or motivation changed over the course of the incident and it gives one factor alone dispositive weight. Majority Opinion at 20-21.

The majority distinguishes *In re Personal Restraint of White*, 1 Wn. App. 2d 788, 407 P.3d 1173 (2017) whereas I would not. In *White*, during a disagreement, White pointed a gun at his girlfriend, Stevens, and threatened to kill her. *Id.* at 790. Stevens pushed their child, N.W.,

off her lap and stood up. *Id.* White then grabbed Stevens's hair, threw her down on the floor, and hit her repeatedly while telling her she was going to die. *Id.* When Stevens tried to get up, White strangled her. *Id.* Stevens saw the gun on the floor and reached for it while White also grabbed the gun. *Id.* White tried to point the gun at Stevens while she tried to deflect the barrel. *Id.* Throughout the incident N.W. was next to them repeatedly screaming at them to stop. *Id.* A jury convicted White of one count of second degree assault with a deadly weapon for pointing the gun at Stevens and one count of second degree assault by strangulation, both with firearm enhancements. *Id.* at 791. Division One of this court found the two convictions violated double jeopardy after the matter was remanded to it for reconsideration by the Washington Supreme Court in light of *Villanueva-Gonzalez*. *Id.* at 792, 798.

Here, Lee was standing outside of the truck and yelled for Groff to get out of the truck. Lee fired the gun in the air, jumped into the truck, and started hitting Groff's head with the gun. Lee then pushed her out of the truck and as she crawled away, Lee exited the truck and started kicking and hitting Groff in the head. Lee started shooting at Groff, who felt the bullets pass her and hit the ground. Lee's wife then came out of the trailer and yelled something, at which point Groff got up and ran. Lee was shooting at Groff as she was running away.

The facts in this appeal are quite similar to those in *White*. In *White*, the court found that intent or motivation factor weighed in favor of the two assaultive acts being part of one course of conduct. *Id.* at 795. The court further found that White "intended to assault Stevens, and the episode as a whole was motivated by the disagreement over where N.W. would live." *Id.* Similarly, here, I would conclude that Lee intended to assault Groff and the episode as a whole was motivated by Lee's belief that Groff stole his wallet and Groff's refusal to leave.

Under the totality of the circumstances, I would hold that Lee's actions were part of a singular course of conduct and thus his two convictions for second degree assault violate double jeopardy. Even if Lee's intent changed when viewed objectively, as the majority concludes, under these facts, I would still hold that under the totality of the circumstances Lee's actions were part of a singular course of conduct and his two convictions for second degree assault violate double jeopardy. Majority Opinion at 20-21. *See Villanueva-Gonzalez*, 180 Wn.2d at 985 ("[N]o one factor is dispositive, and the ultimate determination should depend on the totality of the circumstances, not a mechanical balancing of the various factors."). Therefore, I respectfully dissent.

Che, J.